677 F.2d 741
 110 L.R.R.M. (BNA) 2489, 94 Lab.Cas. P 13,627
 Kay ROLLISON, Plaintiff-Appellee,
v.
HOTEL, MOTEL, RESTAURANT, AND CONSTRUCTION CAMP EMPLOYEES,
LOCAL 879, AFL-CIO, Defendants-Appellants.
Raymond J. DONOVAN, Secretary of Labor, U. S. Department of
Labor, Plaintiff-Appellee,
Kay Rollison, Plaintiff in Intervention Appellee,
v.
HOTEL, MOTEL, RESTAURANT, AND CONSTRUCTION CAMP EMPLOYEES,
LOCAL 879, AFL-CIO, Hotel and Restaurant
Employees, and Bartenders International
Union AFL-CIO-CLS,
Defendants-Appellants.
 Nos. 80-3498, 80-3495.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 6, 1982.
Decided May 18, 1982.
 
 Frederic R. Dichter, Anchorage, Alaska, for defendants-appellants.
 Karen Handorf, U. S. Dept. of Labor, Washington, D. C., argued, for plaintiff-appellee; Dan Siegel, Siegel & Taub, Oakland, Cal., on brief.
 Appeals from the United States District Court, District of Alaska.
 Before KILKENNY, HUG and SKOPIL, Circuit Judges.
 KILKENNY, Circuit Judge:
 
 FACTS
 
 1
 These consolidated appeals arise from a complicated series of events. The lower court decision in Rollison v. Local 879 will be referred to as the free speech case. The lower court decision in Marshall v. Local 879 will be referred to as the election case.
 
 
 2
 Since September of 1976, Rollison had been an outspoken critic of Local 879's union leadership. She had been the leader of members seeking to change the policies and administration of the Local. In the March 8, 1977, local election, Rollison was elected vice-president.
 
 
 3
 On March 23rd and March 25, 1977, Rollison filed several complaints with Local 879 and with the General President of the International Union alleging violations of the International Constitution, the By-Laws of Local 879, and the Labor-Management Reporting and Disclosure Act (LMRDA) in connection with the March 8, 1977, union election. The International President sustained some of the complaints and ordered that a new election be held on July 12, 1977. Rollison then announced that she would be a candidate for the position of Financial Secretary/Business Agent of Local 879 in this election.
 
 
 4
 On April 22, 1977, four paid staff members of Local 879 filed internal union charges against Rollison under subsections of Article XX of the International Constitution. Rollison was charged with:
 
 
 5
 (1) Using "foul, obscene language" towards officers, members and office employees of Local 879.
 
 
 6
 (2) Accusing the union staff of improper actions and threatening their continued employment as a consequence of these alleged actions.
 
 
 7
 (3) Requesting information concerning other members from the office staff.
 
 
 8
 (4) Holding unauthorized meetings with union members in the women's restroom in the basement of the union hall.
 
 
 9
 (5) Disseminating to the members of the union and the media derogatory stories concerning the officers of the Local and the International.
 
 
 10
 (6) Disturbing the office staff through shouts and beating on the office door of the business agent when he refused to meet with and give her the information which she had requested.
 
 
 11
 (7) Creating an atmosphere of "distrust, dissension, frustration and ill will."
 
 
 12
 After hearings held on May 10th and 13, 1977, a trial board appointed by Local 879 issued findings on June 7, 1977, that Rollison had violated subsection (j) of Article XX of the International Charter which prohibited:
 
 
 13
 "(S)uch other acts and conduct which shall be considered inconsistent with the duties, obligations and fealty of a member of a union or violation of sound trade union principles."
 
 
 14
 The trial board recommended the following punishment:
 
 
 15
 (1) Suspension from active membership in the Local for one year.
 
 
 16
 (2) That Rollison be required to pay $850.00 of the estimated cost of the proceeding.
 
 
 17
 (3) That Rollison not be permitted to attend any regular or special meetings of the local for one year. However, she could retain the right to vote in elections for officers and to use the union hall for job call out purposes provided that she paid dues and any fines and otherwise abided by the Local By-Laws and the International Constitution.
 
 
 18
 A Local 879 membership meeting ratified the trial board's findings and recommendations the following day. Rollison appealed the Local's disciplinary action to the International President on June 16, 1977.
 
 
 19
 On June 22, 1977, Rollison filed the free speech case, seeking, inter alia, injunctive relief regarding the Local's suspension of her right to be a candidate in the election scheduled for July 12, 1977. The trial court issued a temporary restraining order on June 24, 1977, which stated in relevant part:
 
 
 20
 "IT IS THEREFORE ORDERED, that pending the further determination of this Court, Defendant is hereby ordered to refrain from giving any effect whatsoever to the discipline imposed upon Plaintiff on June 8, 1977; and
 
 
 21
 IT IS FURTHER ORDERED, that Defendant immediately give written notice to all members of Local 879, in a form approved by Plaintiff and her attorneys, that Plaintiff is a qualified candidate in the election scheduled for July 12, 1977, for the office of Business Agent."
 
 
 22
 On June 27, 1977, the Local's acting Financial Secretary/Business Agent prepared a letter for approval of the trial court. This letter was approved and mailed to the membership on or about June 28, 1977. The letter stated:
 
 
 23
 "This is to advise you that Kay Rollison, candidate for the office of Financial Secretary/Business Agent # 879, is a qualified candidate in the election to be held on July 12, 1977."
 
 
 24
 Rollison was elected Financial Secretary/Business Agent in the July 12, 1977, election. Candidates defeated by Rollison filed election protests with the International President on July 12, alleging that the Court-ordered letter made it appear that Local 879 endorsed Rollison's candidacy. On July 13, 1977, Rollison protested the Local's refusal to install her. On July 26, 1977, the International President denied Rollison's appeal from the Local's June 8, 1977, disciplinary action, but reduced the penalty imposed to a fine of $50.00, thereby (although after the fact) removing the bar to Rollison's July 12th candidacy.
 
 
 25
 On August 19, 1977, the International President denied Rollison's election protests of July 13th, thereby refusing to install her to the position to which she had been elected.
 
 
 26
 Rollison filed a timely complaint with the Secretary of Labor on August 24, 1977. After the statutorily-mandated investigation, the Secretary found probable cause to believe that a violation of Title IV of the LMRDA had occurred and had not been remedied. He filed the election case on October 21, 1977, to compel Local 879 to install Rollison to the position to which she had been elected. The Secretary and Local 879 stipulated to Rollison's intervention in this case.
 
 
 27
 Local 879 moved for summary judgment in the free speech case on November 12, 1977, arguing that Rollison had failed to exhaust internal union remedies. On December 28, 1977, the trial court stayed the free speech case and directed Rollison to exhaust her internal remedies.
 
 
 28
 On January 11, 1978, Rollison appealed the International President's July 26, 1977, ruling to the International General Executive Board. The Board denied the appeal as untimely on March 10, 1978.
 
 
 29
 On March 10, 1978, the trial court granted the Secretary's motion for summary judgment in the election case and ordered Local 879 to install Rollison to her elected position. Local 879 installed Rollison on March 13, 1978.
 
 
 30
 On March 21, 1980, Rollison moved for partial summary judgment in both actions. In the free speech action, she sought summary judgment on the legality of the Local's discipline. In the election action, she sought summary judgment on the Local's liability for the union salary due her between July 12, 1977, and March 13, 1978. The trial court granted Rollison's free speech motion on May 19, 1980, and her election motion on June 25, 1980. On September 18, 1980, the court awarded Rollison $6,066.50 in attorney's fees and costs in the free speech action. On October 9, 1980, the trial court awarded Rollison back pay of $7,935.11 and attorney's fees and costs of $4,091.02 in the election action. These appeals followed.
 
 ISSUES
 We state the issues as follows:
 
 31
 I. Did the district court have jurisdiction in the free speech case?II. Did the district court require sufficient exhaustion of internal union remedies in the free speech case?
 
 
 32
 III. Did the district court err in granting summary judgment in the free speech case?
 
 
 33
 IV. Did the district court's June 24, 1977, order (requiring the letter to be sent in the free speech case) result in a violation of 29 U.S.C. § 481(g)?
 
 
 34
 V. Did the district court properly award back pay, attorney's fees and costs in the two cases?
 
 I.
 
 35
 Rollison brought the free speech case pursuant to Title I of the LMRDA, 29 U.S.C. § 411, the Labor Bill of Rights. Citing Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), appellant argues that since part of the relief Rollison seeks in vindicating her Title I rights concerns matters covered by Title IV (denial of her right to hold union office), she must pursue that relief through the Secretary of Labor in accordance with Title IV procedures.
 
 
 36
 Rollison's position on this issue is supported by Ninth Circuit authority. In her free speech suit, she challenged the disciplinary actions taken by the union. She sought relief under the free speech and assembly provision of the Labor Bill of Rights, 29 U.S.C. § 411(a)(2). Since part of the discipline imposed by the union was the denial of her right to hold union office, Rollison's Title I claim did overlap into a potential Title IV claim. This overlap is more coincidence than anything else. The free speech claim is fundamentally based upon Title I. This case is akin to Kupau v. Yamamoto, 622 F.2d 449 (CA9 1980), rather than Calhoon v. Harvey, supra. In Kupau, this court stated:
 
 
 37
 "We believe that the better view of the relationship between Title I and Title IV remedies is that ... the crucial inquiry is whether a union member has been discriminated against in the exercise of his Title I rights. If so, then 'regardless of other claims' his Title I cause of action is not preempted by the existence of Title IV claims." (Emphasis added) 622 F.2d at 445 (quoting Depew v. Edmiston, 386 F.2d 710, 712 (CA3 1967)).
 
 
 38
 The doctrine taught in Kupau controls. Appellant's first argument is rejected.
 
 II.
 
 39
 29 U.S.C. § 411(a)(4) provides that an aggrieved union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof; ..." Appellant argues that the district court should have dismissed the free speech case since Rollison had failed to exhaust her intra-union remedies.
 
 
 40
 It is well established that this provision for exhaustion of remedies leaves the ultimate decision in the sound discretion of the courts. NLRB v. Industrial Union of Marine & Shipbuilding Workers, 391 U.S. 418, 425-26 & n. 8, 88 S.Ct. 1717, 1722-23 & n. 8, 20 L.Ed.2d 706 (1968); Bise v. International Bro. of Electrical Workers, 618 F.2d 1299, 1303 (CA9 1979), cert. denied 449 U.S. 904, 101 S.Ct. 279, 66 L.Ed.2d 136 (1980). We find no abuse of discretion.
 
 III.
 
 41
 There was no genuine issue of material fact in the free speech case. Rollison did not deny that she did the things for which she was being disciplined. She argued that what she did fell under the Labor Bill of Rights and, therefore, was not subject to discipline. This presented a pure question of law and summary judgment was proper. F.R.Civ.P. 56(c).
 
 
 42
 As to the merits of the free speech claim, the district judge found that "none of the activities attributed to the plaintiff went beyond expression and association and that as a matter of law, they could not be punished by the union."
 
 
 43
 This finding is consistent with the applicable law. 29 U.S.C. § 411(a)(2) protects the conduct of union members, no matter how offensive that conduct may be to other union members. Stachan v. Weber, 535 F.2d 1202, 1203 (CA9 1976); Mallick v. International Bro. of Electrical Workers, 644 F.2d 228, 235 (CA3 1981); Salzhandler v. Caputo, 316 F.2d 445 (CA2 1963), cert. denied 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275. And as to Rollison's "unauthorized meetings" with other union members in the women's rest room, the Sixth Circuit noted that Senator McClellan, one of the principal sponsors of § 411(a)(2), in his explanation of this section said:
 
 
 44
 "That gives union members the right to assemble in groups, if they like, and to visit their neighbors and to discuss union affairs, and to say what they think, or perhaps discuss what should be done to straighten out union affairs, or perhaps discuss the promotion of a union movement, or perhaps a policy in which they believe. They would be able to do all of that without being punished for doing it, as is actually happening today." 105 Cong.Rec. 6477 (86th Cong. April 22, 1959).
 
 
 45
 Kuebler v. Cleveland Lithographers & Photo., 473 F.2d 359, 363 (CA6 1973). Here, no impairment of the union's ability to function is indicated.
 
 
 46
 Appellants place great emphasis on the case of Boilermakers v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). It should be noted that there the Court was determining whether the union member had been given a full and fair hearing under § 411(a)(5). The question of free speech was never addressed. It was probably not raised since Hardeman had been disciplined for repeatedly punching a union official in the face. 401 U.S. at 236, 91 S.Ct. at 612. Rollison's conduct, though offensive, does not appear to rise to the level of a physical attack.
 
 
 47
 The district judge correctly ruled that Rollison's conduct was protected under 29 U.S.C. § 411(a)(2).
 
 IV.
 
 48
 This issue presents a question of first impression. This panel must decide if the letter ordered by the district court to be sent to the union membership resulted in a violation of 29 U.S.C. § 481(g) providing that:
 
 
 49
 "No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election."
 
 
 50
 In the election case, the district court held that the fact the letter was sent pursuant to court order and over the objection of the union prevented what would otherwise have been a violation of § 481(g).
 
 
 51
 Appellants insist that the court had no authority to enter this type of an order and that the letter prepared by the appellants' attorney promoted the candidacy of Rollison. Appellees urge that 29 U.S.C. § 481(g) is not applicable to a factual background such as this, that the court had jurisdiction to enter the order and, additionally, that the letter was a "notice" and did not promote the candidacy of Rollison.
 
 
 52
 Cases such as Yablonski v. United Mine Workers of America, 305 F.Supp. 868 (DDC 1969), cited by appellants are not in point. Those authorities involved voluntary action on the part of the union. Here, the action of the union in sending out the letter was clearly involuntary and pursuant to the court order. In our view, the action by the court in ordering the union to mail the letter fell within the purposes of 29 U.S.C. § 401(c) which makes it clear that the controlling purpose of the Act was "... to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives...." Beyond question the challenged court order and the resulting letter to the members of the union resulted from improper practices on the part of the appellants. We agree with the lower court that a legitimate "expenditure of money under compulsion of a court order does not constitute a violation of 29 U.S.C. § 481(g)." This type of expenditure acts as a prophylactic rule to be employed in the absence of good faith on the part of union officials. To hold otherwise would be to completely circumvent the express purpose of the act to eliminate or prevent improper practices on the part of labor organizations.
 
 
 53
 Moreover, the appellants are in no position to complain. Keeping in mind that the letter was prepared and delivered to the court for its approval by the appellants, it should be clear that the intended purpose of the letter was to advise the membership of Local 879 that the disciplinary action taken by the local's trial board and by the membership meeting did not bar Rollison's candidacy for the position of Financial Secretary/Business Agent. Surely that was the way that the union's attorney understood the purpose of the request for the temporary restraining order. He characterized it as a "Request" to mail out to two thousand odd members of the union "something saying that she is in good standing." Because, as shown by the record, of the wide publicity given to the union's attempt to discipline Rollison, there was sufficient evidence for the trial court to find, as it implicitly did, that the local's membership was laboring under a misapprehension of the identities of the members eligible or qualified for the position of Financial Secretary/Business Agent. For that matter, all parties seem to recognize that the trial court acted to remedy a distortion of the electoral process occasioned by the actions of the local union. The trial court's June 24, 1977, order only corrected the earlier information publicized by the union and did not promote Rollison's candidacy, nor did the letter coerce the union members. It simply restored a neutrality which had been displaced by the wrongful actions of the local union.
 
 
 54
 On the record before us, there was no violation of 29 U.S.C. § 481(g).
 
 V.
 
 55
 Rollison was awarded back pay of $7,935.11 and attorney's fees and costs of $4,091.02 in the election case. In addition, she was awarded $6,066.50 attorney's fees and costs in the free speech case. The court's award of attorney's fees in the election case was because "Intervenor's (Rollison) role in this case was most significant and conferred a substantial common benefit." Similarly, the award in the free speech case was because the Rollison action had "conferred a substantial benefit on the defendant Union."
 
 
 56
 The reasoning of the district court finds its basis in the Supreme Court decision of Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). There, the Court upheld an award for attorney's fees to a successful plaintiff who had brought an action under § 411(a)(2). The Court felt that the union member:
 
 
 57
 "(B)y vindicating his own right of free speech guaranteed by § 101(a)(2) of Title I of the LMRDA, ... (he) necessarily rendered a substantial service to his union as an institution and to all of its members. When a union member is disciplined for the exercise of any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the 'chill' cast upon the rights of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial 'not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs.' ... reimbursement of respondent's attorneys' fees out of the union treasury simply shifts the costs of litigation to 'the class that has benefited from them and that would have had to pay them had it brought the suit.' " 412 U.S. at 8-9, 93 S.Ct. at 1948.
 
 
 58
 In Ross v. International Brotherhood of Elec. Workers, 544 F.2d 1022, 1025 (CA9 1976), this court interpreted Hall as establishing two possible grounds for allowing attorney's fees: (1) that the opposing party acted in bad faith; and (2) that the litigation performed a valuable service for the union and its members. If either ground is found to be present, the award of fees is permissible at the discretion of the district court.
 
 
 59
 The district court judge obviously found the second ground to be present. This finding was not clearly erroneous. Bise v. International Brotherhood of Elec. Workers, supra, at 1306. Although Rollison would have conferred a benefit on the membership even if she had not been elected after she obtained the court order clarifying her eligibility as a candidate, her electoral success fortifies the value of her litigation efforts. Kupau v. Yamamoto, 622 F.2d 449 (CA9 1980). But even if Rollison had been unsuccessful, the amount of her attorney fees should not be diminished. In a recent Title VII action, we approved the following statement from Northcross v. Bd. of Education of Memphis City Schools, 611 F.2d 624, 636 (CA6 1979), cert. denied 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).
 
 
 60
 "So long as the party has prevailed on the case as a whole, the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith."
 
 
 61
 Saunders v. Claytor, 629 F.2d 596, 599 (CA9 1980), cert. denied 450 U.S. 980, 101 S.Ct. 1515, 67 L.Ed.2d 815 (1981). We use identical factors in computing attorney fees under Title VII and LMRDA. Ellis v. Cassidy, 625 F.2d 227, 231 (CA9 1980) (where in a Title VII action, the court adopted the fee standards set out in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (CA9 1975), cert. denied 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), an LMRDA action).
 
 
 62
 Under the same theory, Rollison was entitled to the Title IV award of attorney fees and costs.
 
 
 63
 At least two circuits, in well considered opinions, have recognized that a Title IV intervenor who materially aids the Secretary of Labor in successfully prosecuting the case has conferred a benefit on the union's membership. Brennan v. United Steelworkers, 554 F.2d 586, 605-06 (CA3 1977), cert. denied 435 U.S. 977, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978). Usery v. Teamsters Local 639, 543 F.2d 369, 384-85 (CA DC 1976), cert. denied 429 U.S. 1123, 97 S.Ct. 1159, 51 L.Ed.2d 573 (1977). In addition, this court has held that an intervenor is entitled to attorneys' fees where counsel for the Secretary of Labor has acknowledged the intervenor's "ongoing and vital" assistance in preparing and prosecuting the litigation. Donovan v. Local 70, International Brotherhood of Teamsters, 661 F.2d 1199, 1203 (CA9 1981). Even Trbovich v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), the authority on which appellants mainly rely for denial of attorney fees to an intervenor does not support their theory. For that matter, the general language of that opinion would support the allowance of an attorney fee to an intervenor where the contribution would yield a substantial benefit to the membership exceeding that derived from the Secretary's efforts. Here the district court found such to be a fact and we will not disturb that finding. The record is clear that there was no substantial duplication of services.
 
 
 64
 Appellants contend that the trial court's back pay award was improper. In the 35 weeks between the election of July 12, 1977, and her installation of March 13, 1978, Rollison was employed as a union kitchen helper in a construction camp. In her complaint in intervention she sought the difference between a union salary as financial secretary and business agent and the salary she received as a kitchen helper. The district court took the position that appellants were foreclosed by the memorandum and order of March 10, 1978, from denying its responsibility for keeping Rollison out of office. Based on Rollison's affidavit, the court allowed her motion for partial summary judgment as to back pay, noting with disapproval the defendants' spurious attempt to question the claimed figure of $7,935.11. Additionally, the court noted that appellants had not countered Rollison's affidavit to the effect that the $150.00 weekly "expense" figure was in reality part of her salary, payable irrespective of actual expenses. Because there is nothing in the record to contradict Rollison's affidavit which specifically states that the $150.00 weekly payment was due and owing regardless of the actual expenses incurred, the district court did not err in the allowance of back pay in the indicated amount.
 
 
 65
 Finally, relying upon broad language in Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the union pleads poverty. There, the Supreme Court noted that the extent to which the payment of attorney fees might impair the union's ability to operate effectively should be considered. 412 U.S. at 15, fn. 23, 93 S.Ct. at 1951, fn. 23. The district judge had before him the affidavit with reference to the financial status of the union. Nonetheless, he felt that there was no substantial evidence in the record which would indicate that the allowance of the mentioned sums would jeopardize the union's stability. We will not disturb this finding.
 
 OTHER CONTENTIONS
 
 66
 We have considered the other contentions and points made by appellants and find them unworthy of comment.
 
 CONCLUSION
 
 67
 We conclude that the judgments of the district court must be affirmed.
 
 
 68
 IT IS SO ORDERED.