Sherry R. BRETT, Plaintiff-Appellee,

v.

HOTEL, MOTEL, RESTAURANT, CONSTRUCTION CAMP EMPLOYEES AND BARTENDERS UNION, LOCAL 879, Defendant-Appellant.

No. 85–4261.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1986.

Decided Sept. 28, 1987.

Dan Siegel and Eric Weaver, Oakland, Cal., for plaintiff-appellee.

Bradley D. Owens, Anchorage, Alaska, for defendant-appellant.

Before SKOPIL, FLETCHER and POOLE, Circuit Judges.

FLETCHER, Circuit Judge:

The Union appeals from judgment on a jury verdict awarding $101,000 in damages to Brett on account of the Union's violation of her rights under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). We affirm.

## FACTS

Brett, a member of the Hotel, Motel, Restaurant, Construction Camp Employees and Bartenders Union, Local 879 (Union), began kitchen work at Construction Camp No. 2 (CC2) at Prudhoe Bay, Alaska in 1976. In March of 1977, Brett was elected shop steward for CC2. The collective bargaining agreement in effect at the time of her election provided that the steward "be selected by the men on the job, with the approval of the local union." The union contract also provided that stewards would have super-seniority, that is, in the event of layoffs they would be the last to lose their jobs.

On September 5, 1978, Brett was injured in an automobile accident. On that date, Brett held top seniority at CC2, by virtue of her position as steward as well as her date of hire. Because Brett was out of work for more than thirty days due to her injuries, she was terminated by her employer pursuant to the collective bargaining agreement. When she returned to work in January of 1979, she was a "new hire" at the bottom of the hire-date seniority ladder.

The collective bargaining agreement in effect on the date of Brett's accident and throughout the period at issue here provided that stewards would be "selected by the Union's Business Agent." While Brett was out of work, business agent Kay Rollison appointed another as steward. Brett claims that this was meant only as an interim appointment, effective until her return. Brett was either reinstated to her elected position or appointed as steward by Rollison the day after she returned to CC2.

On March 13, 1979, Kay Rollison was defeated in an election for business agent by William Hensley. Brett had supported Rollison in that election. On March 17, Brett was removed from her position as steward by Union President, James Campion, who, on that date, was acting business agent. Brett's removal was allegedly prompted by a report that Brett had passed out Teamster bargaining cards. This charge was denied by Brett and never subsequently substantiated. On March 20, Hensley visited CC2 and announced that there would be an election for steward. Over lunch, Hensley was told that Brett would win the election. At a 2:00 p.m. gathering of union members, Hensley an-

nounced that there would be no election, but rather that he would appoint a steward.

The Union claims that Hensley did not want Brett elected steward because layoffs were soon to come and "it would be in the best interest of the members" to appoint a member with high seniority. Brett claims that her removal was part of a three-year effort by officials of Local 879 to purge Kay Rollison and her supporters from positions in Union leadership. Rollison, in her attempts to protest union activities, run for union office, and stay in office once elected, had been met with a series of illegal obstructions carried out by the Local and the International. *See, e.g., Rollison v. Hotel, Motel, Restaurant, and Construction Camp Employees Local 789*, 677 F.2d 741 (9th Cir.1982).

With loss of her position as union steward, Brett lost her super-seniority and, on March 27, 1979, her job.

### PROCEEDINGS BELOW

Brett's original complaint named five defendants and pled four causes of action. However, only one defendant, the Union, and part of one cause of action remained by the time the case went to the jury. Brett claimed that her removal as steward was illegal retaliation for her exercise of her rights to freedom of speech and assembly under section 101(a)(2) of the LMRDA,

29 U.S.C. § 411(a)(2). Jurisdiction was invoked under LMRDA section 102, 29 U.S.C. § 412 (1982).

Early in this litigation, the Supreme Court decided *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), which held, with some arguable exceptions, that there was no cause of action under section 101(a)(2) for union members based on their removal from union office. The Union moved for summary judgment, arguing that *Finnegan* barred Brett's claim.

In deciding the motion, the district court "focus[ed] on the questions whether *Finnegan v. Leu* is applicable to elected union officials ... and, if not ..., whether there are questions of fact concerning the plaintiff's status as elected or appointed." In denying summary judgment, the court found that *Finnegan* did not apply to elected job site stewards and that there were triable issues of fact as to Brett's status.[1]

The parties filed a stipulated pretrial order stating that there were four contested issues for trial: (1) whether Brett was elected or appointed; (2) whether Brett was a nonpolicy-making or nonconfidential official; (3) whether Brett had been removed from office due to her exercise of free-speech rights; and (4) whether Brett's removal was part of an attempt to suppress dissent within the Union.[2] At the close of Brett's case, the Union moved to dismiss,[3] or in the alternate for summary judgment,

1. The district court also found that "the steward in the record before the court is neither a management level policymaker or [sic] confidant." We assume that this finding was prompted by the *Finnegan* Court's leaving "open the question whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees." 456 U.S. at 441 n. 11, 102 S.Ct. at 1873 n. 11. The district court did not find, as a matter of law, that nonpolicymaking or nonconfidential employees were not covered by *Finnegan*, nor did it find, as a matter of fact, that Brett was such an employee—it simply found that the pretrial record supported that conclusion. Furthermore, we fail to see the relevance of a nonpolicymaking/nonconfidential exception to *Finnegan* to the issue decided by the district court: whether there was an elected official exception to *Finnegan*. Because this holding established no law of the case, and because the Union continued to argue this point throughout the trial, we see no need to review it for legal or factual correctness.

2. The first, second, and fourth issues relate to possible exceptions to *Finnegan,* while the third relates directly to the LMRDA claim.

3. The Union's counsel stated to the district court that his motion was made pursuant to Fed.R. Civ.P. 41(b). Involuntary dismissals after the plaintiff's evidence provided for by rule 41(b) are, however, available only "in an action tried by the court without a jury." On appeal, the Union claims that its motion was one for a directed verdict made pursuant to Fed.R.Civ.P. 50(a), which does apply to jury trials. While counsel's error may have been merely technical and, in any event, has no effect on our disposition of this case, recharacterizations of factual events are not appreciated by this Court. *Cf. Lopez v. General Motors Corp.*, 697 F.2d 1328, 1333 (9th Cir.1983) ("In briefing cases, counsel should not assume that we will not check the pertinent parts of the record.").

claiming that Brett had not presented sufficient evidence to prove that her dismissal was retaliatory. Both motions were denied.

Brett's counsel provided the district court with proposed jury instructions, but the Union's counsel did not. The final instructions were agreed to by the parties in an *in camera* conference with the judge, and the Union offered no objections to the instructions before they were read to the jury.[4]

Following the jury's verdict in favor of Brett, the Union moved for a judgment notwithstanding the verdict (JNOV) pursuant to Fed.R.Civ.P. 50(b).[5] In the alternative, the Union moved for a new trial. The district court denied both the JNOV and a new trial.

## DISCUSSION

### 1. The Effect of Finnegan v. Leu

The Union asks us to find that Brett's LMRDA claim was barred by *Finnegan.* In *Finnegan,* appointed Teamster business agents were ousted from their positions by a newly elected president whom they had not supported. The local's bylaws gave the president authority to appoint and discharge business agents. The ousted agents sued the union under various sections of the LMRDA including the sections relevant here: section 102, 29 U.S.C. § 412, which provides for a private cause of action in district court for violations of Title I of the LMRDA, 29 U.S.C. §§ 411–415, and section 101(a)(2) of Title I, 29 U.S.C. § 411(a)(2), which, in part, provides:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments or opinions; and to express at meetings ... his views, upon candidates in an election ..., subject to the organization's established and reasonable rules pertaining to the conduct of meetings....

Recognizing that the petitioners—as members—had a protected right to support the candidate of their choice, the Court phrased the issue as "whether they were thereby immunized from discharge at the pleasure of the president from their positions as appointed union *employees." Finnegan,* 456 U.S. at 437, 102 S.Ct. at 1871. The Court determined that "it was rank-and-file members—not union officers or employees, as such"—whom Title I was aimed at protecting. *Id.* Because petitioners had not been prevented from exercising their *membership* rights to vote and campaign for their candidate, *id.* at 440, 102 S.Ct. at 1872, the court held that their rights under Title I had not been infringed. *Id.* at 440–42, 102 S.Ct. at 1872–74. That the petitioners "were forced to 'choos[e] between their rights of free expression ... and their jobs,'" *id.* at 440, 102 S.Ct. at 1873 (quoting *Retail Clerks Union Local 648 v. Retail Clerks Int'l Ass'n.,* 299 F.Supp. 1012, 1021 (D.D.C.1969)), was termed only an "indirect interference" insufficient to support the cause of action. *Id.*[6]

Brett argues that *Finnegan* does not apply to elected officers, *see supra* at 1412, to nonpolicymaking or nonconfidential officers, *see Finnegan,* 456 U.S. at 441 n. 11, 102 S.Ct. at 1873 n. 11; *supra* note 1, or to officers removed in a union's purposeful attempt to suppress dissent, *see, e.g., Finnegan,* 456 U.S. at 441, 102 S.Ct. at 1873; *Adams-Lundy v. Association of Professional Flight Attendants,* 792 F.2d 1368, 1372 (5th Cir.1986), and that she fits into all

---

4. After the jurors had retired to deliberate, the Union's counsel objected that an incorrect burden of proof had been employed; that there was insufficient evidence, as a matter of law, to establish a connection between Brett's removal and an attempt to suppress dissent; that the measure of damages was incorrect for failure to require a deduction of taxes; and that damages had not been established with sufficient certainty to allow the issue to go to the jury. These were, in the Union's words, its "only objections" to the instructions.

5. We note that this motion was improper as JNOV motions may be made only if there has been a motion for a directed verdict pursuant to Fed.R.Civ.P. 50(a) at the close of *all* the evidence, Fed.R.Civ.P. 50(b), and the Union failed to make the prerequisite rule 50(a) motion.

6. The jobs in question were the appointed positions, not rank-and-file jobs.

of these exceptions. The Union claims that *Finnegan* does apply to elected officials but does not challenge the nonpolicymaking/nonconfidential or the suppression-of-dissent exceptions to *Finnegan*. It does, however, ask us to find that Brett was appointed, not elected; that she was a policymaking or confidential officer; and that reasonable jurors could not have found that the Union engaged in a deliberate and purposeful attempt to suppress dissent.

■ Whether Brett was elected or appointed is a question of fact that should have been submitted to the jury, but was not. Nor did the district court make any determinations on this issue. As we have noted, *see supra* at 1412, the Union did not submit jury instructions and did not object to the instructions in a timely fashion. Because the Union failed to ensure that this issue was presented to the jury or to object to the fact that it was not, it cannot now raise the question on appeal.[7]

Similarly, there was no final determination by the district court that, as a matter of law or as a matter of fact, Brett was a nonpolicymaking or nonconfidential officer, *see supra* note 1, and the jury instructions do not even allude to this issue. Thus, as with the issue of Brett's status as elected

or appointed, we conclude that whether Brett was a policymaking or confidential employee, is not properly before this court.

We are left, then, with two issues relating to the applicability of *Finnegan* to this case: (1) whether the district court correctly determined that *Finnegan* did not apply to elected officers; and (2) whether the jury could reasonably have determined that the Union removed Brett from office as part of a deliberate attempt to suppress dissent.

### A. Elected Officers under Finnegan

■ We review *de novo* the district court's conclusion of law that *Finnegan* is inapplicable to elected officers. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The basis for an elected/appointed distinction under *Finnegan* is found both in the policy goals of the LMRDA and in the *Finnegan* opinion's consistent reference to "appointed union employees" and absence of reference to the rights of elected union employees or officers. Although most courts have either rejected an appointed/elected distinction under *Finnegan*, or sharply limited it,[8] this court, in

---

7. Fed.R.Civ.P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict." This circuit does not apply the "plain error" rule in order to review jury instructions on a ground not raised at trial. *Bertrand v. Southern Pacific Co.*, 282 F.2d 569, 572 (9th Cir.1960), *cert. denied*, 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961); *accord Moore v. Telfon Communications Corp.*, 589 F.2d 959, 966 (9th Cir.1978). We have recognized only one exception to the requirement of strict compliance with Rule 51: If the court is "aware of [a party's] concerns with the instruction[s] and further objection would be unavailing," we will not require the party to engage in the "pointless formality" of formal objections. *Robert's Waikiki U–Drive, Inc. v. Budget Rent–A–Car Systems*, 732 F.2d 1403, 1410 (9th Cir.1984) (citing *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367, 1373 (9th Cir.1979)); *see also Lifshitz v. Walter Drake & Sons, Inc.*, 806 F.2d 1426, 1430–31 (9th Cir.1986); *Harmsen v. Smith*, 693 F.2d 932, 939 (9th Cir.1982), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). There is no indication in this case that objections would have been a pointless formality.

8. The Fifth Circuit flatly rejected the idea "that the fact that the removed officer was elected ... suffice[s] to create jurisdiction under the LMRDA." *Adams-Lundy v. Association of Professional Flight Attendants*, 731 F.2d 1154, 1159 (5th Cir.1984). The Eighth Circuit applied *Finnegan* to an elected business manager without discussing any possible exception. *Sullivan v. Laborers' Int'l Union*, 707 F.2d 347 (8th Cir. 1983). One district court found the elected/appointed distinction meritless because the *Finnegan* Court stated that it had granted *certiorari* to resolve a circuit split, *Finnegan*, 456 U.S. at 433, 102 S.Ct. at 1869, and, of the cases cited as being involved in the split, seven of eleven involved elected officials. *Local 314 v. National Post Office Mail Handlers*, 572 F.Supp. 133, 137 (E.D.Mo.1983).

The Eleventh Circuit's approach in *Dolan v. Transport Workers Union*, 746 F.2d 733 (11th Cir.1984), is more complicated. *Finnegan* involved patronage dismissals, which the *Dolan* court found posed less of a "threat to LMRDA's broad goal of democratizing unions" than do dismissals of elected officials. *Id.* at 741. But that alone was not enough to "transform allegations of ouster from office into a § [101](a)(2)

*Lynn v. Local 75, Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1478 (9th Cir. 1986), held that "at a minimum, a retaliatory removal from elective office violates section 102 of the LMRDA when it occurs as 'a purposeful and deliberate attempt ... to suppress dissent within the union.'" (quoting *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973)).

We are convinced that sound policy reasons support the *Lynn* holding. The *Finnegan* Court twice pointed out that the foremost objective of the LMRDA "was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections." *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873; *id.* at 436, 102 S.Ct. at 1870. Given this emphasis, it follows that newly elected officers should be given a free rein to remove their predecessor's appointees.[9] The mandate of an appointee stems directly from the elected official who appointed her, and once the elected official has been removed from office by the membership, it *would* be anti-democratic to forbid the removal of that official's functionaries. This rationale does not support the removal of elected union officers. Their mandate comes directly from the membership, and the more democratic result would obtain were the membership able to maintain its authority over elected positions.

As the Sixth Circuit has pointed out, "elected union officers [invest] ... appointee[s] with the trust of the membership." *Cehaich v. International Union*, 710 F.2d 234, 239 (6th Cir.1983). If that trust is abused, it is the elected official, not the appointee, who will answer for it in the next election: "Since the union members cannot remove the appointed [official] directly, their alternative is to remove the elected union officials responsible for his or her appointment." *Id.* at 239 n. 9. By contrast, where the elected official performs inadequately, the membership need not express its displeasure at the expense of other elected officials; rather, it can reach the problem directly through the electoral process.[10]

In *Finnegan*, the Union's bylaws gave the president "plenary authority to appoint, suspend, [and] discharge," the holder of the office in question. *Finnegan*, 456 U.S. at 441, 102 S.Ct. at 1873. The removed officers complained that the authority so conferred had been exercised illegally. The Court found that, at least in most cases, there were no legal restraints on this exercise of power. Where, on the other hand, the power to place an official in office is vested in the membership, it is inappropriate and contrary to LMRDA goals to apply *Finnegan* and so undermine democratic union governance. The district court

---

claim for infringement of membership speech." *Id.* The *Dolan* court distinguished between "officer speech," which advances or interferes with the duties of office, and ordinary "membership speech," and determined that elected officials engaging in "membership speech" could have a section 101(a)(2) claim if ousted from office because of that speech. *Id.* at 742. The *Dolan* court found that the speech in question "was inextricably entangled with [Dolan's] duties as an officer," and thus failed to support her section 101(a)(2) claim. *Id.* at 742–43. This court has explicitly rejected the Eleventh Circuit's analysis because any speech by an officer could, arguably, be deemed officer speech. *Lynn v. Local 75, Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472, 1479 n. 5 (9th Cir.1986).

9. That the *Finnegan* Court was not addressing itself to the issue of elected officers is underscored by its holding that the LMRDA "does not restrict the freedom of an elected union leader

to *choose* a staff whose views are compatible with his own." 456 U.S. at 441, 102 S.Ct. at 1873 (emphasis added) (footnote omitted). Where elected positions are concerned, a union leader's freedom of choice obviously does not come into play.

10. It appears to us that the LMRDA goal of union democracy will be much better served if the membership's elected representatives may speak out on issues relating to their office without fear of reprisal from elected officials higher up. For this additional reason, the rule set forth in *Dolan, see supra* note 8—that elected officials may not be removed from office for their speech only if that speech is "membership" speech as opposed to "officer" speech—seems questionable. Even under the *Dolan* test, however, Brett's speech would be protected; she campaigned for Rollinson in her capacity as a member, not as an officer.

therefore did not err in finding *Finnegan* inapplicable to elected stewards.[11]

### B. Reasonableness of the Suppression-of-Dissent Determination

One of the theories for recovery built into the jury instructions was that section 101(a)(2) of the LMRDA is violated by removal of a union member from office when such removal is part of a deliberate and purposeful attempt to suppress dissent within the union. The Union does not challenge the validity of this theory, but claims that there was an insufficient factual basis to support recovery under it.

"The standard for reviewing a jury verdict is whether it is supported by substantial evidence." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1013–14 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). That is, "we must determine whether there is sufficient evidence in the record to support the jury's verdict. We cannot disturb [the] verdict unless no reasonable person would accept the evidence presented to establish a fact essential to prove liability." *Id.* at 1015. Where, as here, a general verdict was rendered, if the evidence fails to support the verdict under one of the plaintiff's theories, we may not affirm the verdict even though the jury could properly have granted relief based on a separate theory. *Syufy Enters. v. American Multicinema, Inc.*, 793 F.2d 990, 1001 (9th Cir.1986).

At trial, Brett presented evidence, (1) that the Union had done everything it could, including several acts judicially de-termined to be illegal, to prevent Kay Rollison from protesting Union actions and from assuming power within the Union hierarchy; (2) that Brett had supported Rollison in various union campaign activities; (3) that Hensley knew Brett was a Rollison supporter;[12] (4) that Brett was initially removed from her steward position based on unsubstantiated allegations; and (5) that Hensley told various people at CC2 that he would hold an election for steward, but changed his mind when informed that Brett would win the election.

The Union presented Hensley's testimony, (1) that he did not know Brett supported Rollison, *see supra* note 12; and (2) that his motivation for cancelling the election was his desire to avoid unrest over impending layoffs by appointing a steward with high seniority based on date of hire. The Union also elicited testimony from Brett's witnesses that they were unaware that Brett was vocally supportive of Rollison.

Based on the testimony presented at trial, we cannot say that no reasonable person could find that the Union engaged in a deliberate, purposeful attempt to suppress dissent within the Union—it is undisputed that it did so with respect to Rollison—and that Brett's removal was part of that campaign. Certainly the jury had to infer from the Union's treatment of Rollison and Brett's support of Rollison that this was the reason for her dismissal, but the inference is not an unreasonable one.[13] We therefore reject the Union's attack on the

---

**11.** We do not hold an elected official always has a cause of action. Instead, we merely follow *Lynn,* 804 F.2d at 1478, to hold that at a minimum an elected official has a cause of action when he or she suffers a retaliatory removal which occurred as a purposeful and deliberate attempt to suppress dissent within the union.

**12.** On direct examination, Brett's counsel asked Hensley, "Now, of course you are aware of the fact that [Brett] supported Kay Rollison?" Hensley's response was "That's correct." On cross-examination, the Union's counsel asked, "Did you have any idea who [Brett] supported in the election of March 13th?" Hensley responded, "No."

**13.** This is especially true given the implausibility of Hensley's explanation of his action. He claimed to be concerned that having a worker with low hire-date seniority in the position of steward would increase dissention because that worker would be protected from the upcoming layoffs by virtue of the super-seniority afforded to stewards. However, given that the workers who would have elected the steward were aware of the threat of layoffs, steward super-seniority, and Brett's low hire-date seniority, they were certainly capable of considering these factors when deciding whom to elect.

verdict as not being supported by the evidence.[14]

### 2. Damages

The Union challenges Brett's $101,000 verdict as being factually excessive and as being legally precluded by a prior recovery obtained in another lawsuit.

### A. Excessiveness

■ The Union argues that the damages awarded Brett for lost wages and fringe benefits were not supported by the evidence because (1) based on the fact that the jury adopted Brett's computations rather than the allegedly more realistic figures provided by the Union, it did not make an independent judgment of the evidence; (2) the award included compensation for fringe benefits based on Brett's argument, not on evidence in the record; and (3) the jury did not consider Brett's duty to mitigate her damages.

In *Barzelis v. Kulikowski*, 418 F.2d 869 (9th Cir.1969), the defendant also claimed that the verdict was excessive, in part because the jury awarded exactly what counsel had asked for. As is the case here, the trial court had denied a motion for a new trial. This court found "the proper test" to be as follows:

> "Absent a total want of evidence on all or certain portions of the case, or the erroneous exclusion ... of appropriate matters or a showing of bias or prejudice on the part of the jury, this court may not reverse the trial court unless the verdict can be said to be grossly excessive or monstrous...."

*Id.* at 870 (quoting *Siebrand v. Gossnell*, 234 F.2d 81, 94 (9th Cir.1956)); *accord Los Angeles Memorial Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir.1986); *Blanton v. Mobil Oil Corp.*, 721 F.2d 1207, 1216 (9th Cir.1983), *cert. denied*, 471 U.S. 1007, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985);

*Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658 (9th Cir.1982).

■ We find evidence in the record to support both Brett's lost wages and lost fringe benefits. It is not claimed that relevant evidence was erroneously excluded, that the jury was biased or prejudiced, or that the verdict was "grossly excessive or monstrous." As to Brett's duty to mitigate her damages, there was testimony on both sides concerning Brett's attempts to secure other employment and the availability of work at CC2. The jury, however, received no instruction on Brett's duty to mitigate damages. The Union's failure to object to the instructions or offer a proposed instruction on mitigation precludes raising that issue on appeal. *See Glovatorium Inc.*, 684 F.2d at 664; *supra* at 1413 & note 7.

### B. Legal Preclusion

[7, 8] In May of 1984, Brett was awarded a $42,000 judgment against the owner of the car involved in her September 1978 accident. The jury assessed Brett's damages at $56,000 and reduced the award by 25% for contributory negligence. The verdict was a general verdict. *Brett v. H.C. Price Co.*, No. A80265 CIV (D.Alaska 1984) (verdict No. 1). In that action, Brett claimed over $200,000 in damages for (1) medical expenses of approximately $1,200; (2) pain and suffering; (3) lost wages from the date of the accident through the day she returned to work; and (4) lost wages from the time she was laid off at CC2 through the date of trial. The defendant in the accident case argued that its conduct was not the cause of Brett's layoff, that is, that the fact that she returned to work with a low hire-date seniority and was subsequently laid off was not a risk for which it was liable. The jury was given a proximate cause instruction and thus could have awarded nothing for lost wages caused by Brett's layoff.[15] There is, of course, no

---

14. The jury was also instructed that "[i]t is illegal for a union to remove a member from a steward's position in retaliation for that member's exercise of free speech rights." The Union argues that there was insufficient evidence to support a verdict for Brett on this theory as well. For the same reasons that we rejected the

insufficiency argument relating to the suppression-of-dissent theory, we disagree.

15. Total lost wages claimed were $137,996, while Brett's total recovery was $52,000 (reduced by 25%), so it is quite clear that at least $86,000 of Brett's wage claim was rejected by the jury.

way of knowing how the jury calculated damages in the accident case.

The Union claims either that Brett's recovery from the Union, in light of her recovery from H.C. Price, is an impermissible double recovery, or that the doctrine of collateral estoppel permits her to recover no more than $52,000. We find both theories to be without merit. First, although the jury in *H.C. Price* was free to award Brett damages for lost wages following her layoff, there is no indication that it did so. There is nothing in the record to indicate that Brett will recover twice for her post-layoff unemployment.

Second, the doctrine of collateral estoppel does not apply because the issues litigated in *H.C. Price* involved damages suffered as a result of the auto accident, while the issues litigated in the instant case involved damages suffered as a result of Brett's layoff. The *H.C. Price* jury did not determine whether Brett suffered a loss of wages as a result of the *Union's* actions, but only whether Brett lost wages as a result of H.C. Price's actions. Unless "the issue decided in the prior adjudication [is] identical with the one presented in the action in question," collateral estoppel does not apply. *General Teamsters Local 162 v. Mitchell Bros. Truck Lines*, 682 F.2d 763, 768 (9th Cir.1982).

## CONCLUSION

Based on the foregoing, the judgment entered by the district court is AFFIRMED.