**OPERATIVE PLASTERERS & CEMENT MASONS INTERNATIONAL ASSOCIATION OF THE UNITED STATES AND CANADA, AFL–CIO, et al., Plaintiffs,**

v.

**James E. BENJAMIN, Defendant.**

No. S91–293M.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 3, 1993.

See also 776 F.Supp. 1360.

**1269**

as to liability on three counts of their seven count complaint against the defendant, a former officer of the local. The defendant has moved the court to reconsider the October 15, 1992 order, 144 F.R.D. 87 granting the plaintiffs' motion to compel production of documents and awarding expenses pursuant to Fed.R.Civ.P. 37(d). The plaintiffs have filed a motion for ·expenses incurred in obtaining the October 15, 1992 order. Finally, the plaintiffs have filed a motion for protective order pursuant to Fed.R.Civ.P. 26. For the following reasons, the court denies the plaintiffs' partial summary judgment motion, denies the defendant's motion for reconsideration, grants the plaintiffs' motion for expenses, and grants the plaintiffs' motion for protective order. The court will address each motion in turn.

## I. *Motion for Partial Summary Judgment*

The plaintiffs, the Operative Plasterers' and Cement Masons' International Association ("OP & CMIA") and its affiliated Local ("Local 101"), seek summary judgment as to liability on Counts II, III, and VII of their complaint. Count II alleges a claim for breach of the OP & CMIA Constitution and the Local 101 Constitution pursuant to § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. Count III alleges a claim for breach of fiduciary duty pursuant to § 501 of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501, and Count VII alleges a breach of fiduciary duty claim under Indiana common law.

### A. *Background*

Defendant James Benjamin held elected offices in Local 101 for twenty-six of the thirty years in which he was a member of the OP & CMIA. He was president of Local 101 from 1964 to 1972; from 1972 until his resignation in June 1991, he was business manager (the equivalent of chief executive officer) of Local 101.

The OP & CMIA contends Mr. Benjamin violated his contractual and fiduciary duties to the union from April to June 1991. By his own admission, Mr. Benjamin engaged in the following activities during that period.

Barry A. Macey, Macey Macey and Swanson, Indianapolis, IN, Robert J. Henry, R. Richard Hopp, Charles W. Gilligan, O'Donoghue and O'Donoghue, Washington, DC, for plaintiffs.

Charles L. Berger, Berger and Berger, Evansville, IN, for defendant.

### MEMORANDUM AND ORDER

MILLER, District Judge.

The plaintiffs, an international union and its affiliated local, seek summary judgment

In April 1991, in his position as trustee of the health and welfare funds of Local 101, Mr. Benjamin proposed an amendment to the union pension plan that would allow a union member who left the OP & CMIA to continue to make contributions to the OP & CMIA fund, "so that the trust fund would never go belly up." The Local 101 Executive Board adopted this proposal on June 5, 1991.

Also in April 1991, Mr. Benjamin learned of rumors of a possible merger between the OP & CMIA and the Bricklayers' union. In May, he participated in various meetings with representatives of a third labor organization, the Laborers International Union of North America ("Laborers"), and officers of other OP & CMIA locals. At those meetings, the parties discussed potential job opportunities with the Laborers for Mr. Benjamin and other Local 101 members, and discussed procedures for obtaining the resignations of Local 101 members from the OP & CMIA. None of the participants informed the OP & CMIA of these meetings.

At a June 5 executive board meeting of Local 101, Mr. Benjamin explained his efforts to amend the pension plan, explained the membership offer from the Laborers, presented resignation forms, and announced his expectation that Local 101 would be placed under trusteeship by the OP & CMIA the next day. At that evening's general membership meeting, Mr. Benjamin told the general membership that the Laborers offered opportunities that would provide more work, cheaper insurance, and a better pension. He made forms available to the Local 101 membership for the purpose of resigning from Local 101. Mr. Benjamin indicated that he was going to seek employment with the Laborers, but recommended to the Local 101 membership not to resign from Local 101. Carl Wolfe, the Secretary of Local 101, recorded none of the June 5 events on the Local 101 minutes.

On June 9, while playing golf with Mr. Benjamin, Carl Wolfe tendered his resignation from Local 101 to Mr. Benjamin. After finishing eighteen holes, Mr. Benjamin returned to Local 101's office and signed his own resignation. He left the resignation letter on the desk in what soon would be his former office, and did not inform anyone in the OP & CMIA of his resignation until several days later. Mr. Benjamin's resignation became effective at 12:01 on June 10; he went to work for the Laborers on the morning of June 10.

On June 13, pursuant to the terms of the OP & CMIA Constitution, General President Vincent Panepinto placed Local 101 under trusteeship and ordered Mr. Benjamin to turn over all of Local 101's property to the lawfully appointed trustee.

On June 17, Mr. Benjamin attended a meeting between representatives of the Laborers and the OP & CMIA. At that meeting, the Laborers' representatives indicated that Mr. Benjamin was not alone in his defection from the OP & CMIA. As of June 17, no Local 101 members other than James Benjamin and Carl Wolfe had defected to the Laborers. On June 18, Mr. Benjamin and other former business managers of OP & CMIA locals in Indiana met in Terre Haute, Indiana and drafted a letter addressed to all OP & CMIA members in Indiana explaining the business managers' actions. The letter explained:

> We have been inundated by letters from the International condemning the action which we have taken.

> The action which we have taken was precipitated by the changing of International Presidents and the lack of concern for the welfare of the Cement Masons by joining into an agreement with the Bricklayers International.

> We sincerely believe that the benefits that are to be gained by all the members will be far superior to those we have experienced in the past.

On June 25, the OP & CMIA and Local 101, under the International's trusteeship, filed a seven-count complaint against Mr. Benjamin in this court. The court denied Mr. Benjamin's motion to dismiss the complaint for lack of subject matter jurisdiction. *See OP & CMIA v. Benjamin,* 776 F.Supp. 1360 (N.D.Ind.1991). On August 7, 1992, the plaintiffs moved for partial summary judgment as to Mr. Benjamin's liability on Counts II, III, and VII of the complaint. The par-

ties have requested oral argument on the motion, but the court finds that oral argument is not warranted; accordingly, the motion is now ripe for ruling.

## B. Standard of Review

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Duane v. Lane,* 959 F.2d 673, 675 (7th Cir.1992). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.,* 915 F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991); *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991).

The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991); *McCarthy v. Kemper Life Ins. Companies,* 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992); *Mestayer v. Wisconsin Physicians Service Ins. Corp.,* 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Prince v. Zazove,* 959 F.2d 1395, 1398 (7th Cir.1992), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Kizer v. Children's Learning Center,* 962 F.2d 608, 611 (7th Cir. 1992).

## C. Analysis

The plaintiffs contend that from April 1991 until his June 1991 resignation, Mr. Benjamin used his position of authority within Local 101, as well as the power of other local leaders across Indiana, to produce the wholesale defection of OP & CMIA members to the Laborers, a rival labor organization. The plaintiffs contend that Mr. Benjamin's own deposition testimony conclusively demonstrates that his actions violated provisions of the OP & CMIA and Local 101 constitutions and violated his fiduciary duty to the OP & CMIA.

According to Mr. Benjamin, he attempted to act in the best interests of Local 101 and its members. He contends he acted in response to rumors of a possible merger between the OP & CMIA and the Bricklayers, as well as other actions taken by the OP & CMIA leadership that would have been detrimental to the interests of Local 101.

### 1. Breach of Contract/Constitution

The plaintiffs' claim that Mr. Benjamin's actions violated the terms of the OP & CMIA and Local 101 constitutions arises under § 301 of the LMRA, 29 U.S.C. § 185. *See Tile, Marble, Terrazzo Union v. Local 25,* 972 F.2d 738, 742 (7th Cir.1992). This court previously held that it had jurisdiction to award injunctive relief under § 301, but had no jurisdiction over claims for money damages premised on an alleged breach of the OP & CMIA constitution.

In light of the court's prior ruling, summary judgment in the plaintiffs' favor is inappropriate on Count II because the court lacks jurisdiction over any claim for money damages and any claim for injunctive relief would appear to be moot.

The plaintiffs assert that Mr. Benjamin violated numerous provisions of the OP & CMIA and Local 101 constitutions. They contend that Mr. Benjamin violated constitutional provisions that obligated Mr. Benjamin as officer and member of Local 101 to:

—not perform acts in any way prejudicial to the best interests of the OP & CMIA;

—endeavor at all time to promote the OP & CMIA's prosperity and usefulness;

—vigilantly protect the trade jurisdiction of the OP & CMIA;

—not take any action that would tend to undermine the working rules, wages and conditions of the other members of Local Union 101;

—not sponsor a dual union;

—not perform any act that generally violates sound trade union principles.

Because Mr. Benjamin no longer is a member or officer of the OP & CMIA or Local 101, the court cannot imagine any injunctive relief that would remedy any alleged violation of those provisions. Accordingly, the court declines to consider the merits of the plaintiffs' breach of contract claim unless and until the plaintiffs present evidence of a live case or controversy within the court's jurisdiction.

### D. Section 501 of the LMRDA

The plaintiffs contend that Mr. Benjamin's actions violated the fiduciary duty imposed on union officers by § 501(a) of the LMRDA, 29 U.S.C. § 501(a). Mr. Benjamin contends a question of material fact remains as to whether his actions were taken in the best interest of Local 101 and its membership.

Section 501 of the LMRDA provides:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

Section 501 was adopted primarily to address the problem of corruption among union officials. *Tile, Marble, Terrazzo Union v. Local 25,* 972 F.2d at 744; *Talbot v. Robert Matthews Distributing Co.,* 961 F.2d 654, 667 (7th Cir.1992); *Trustees of the Operative Plasterers' and Cement Masons' Local Union Officers and Employees Pension Fund v. Journeymen Plasterers' Protective and Benevolent Soc'y,* 794 F.2d 1217, 1221 (7th Cir. 1986).

The exact scope of the fiduciary duty imposed by § 501 is a matter of some debate among the circuits. *Trustees of Operative Plasterers v. Journeymen Plasterers,* 794 F.2d at 1220. Some circuits have held that a breach of duty proscribed under § 501 occurs only when that breach is grounded in an alleged misappropriation of money or property. *See Gurton v. Arons,* 339 F.2d 371 (2nd Cir.1964). Other courts have taken a more expansive view of § 501 and have seen it as a weapon to correct abuses in the union's internal process of governance. *See Pignotti v. Local # 3 Sheet Metal Workers' Int'l Ass'n,* 477 F.2d 825 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973). Dicta can be found in Seventh Circuit case law supporting either interpretation. *See Lux v. Blackman,* 546 F.2d 713, 718 (7th Cir.1976) (advocating limited approach of *Gurton v. Arons,* 339 F.2d 371); *Hood v. Journeymen Barbers,* 454 F.2d 1347, 1353 (7th Cir.1972) (stating that legislative history supported broad interpretation adopted in *Pignotti v. Local # 3,* 477 F.2d 825). More recent Seventh Circuit precedent confirms that this circuit has expressly declined to describe, except in the most tentative and fact-specific way, the contours of § 501. *Trustees of Operative Plasterers v. Journeymen Plasterers,* 794 F.2d at 1221.

Despite confusion as to the exact contours of the fiduciary duty under § 501(a), courts unanimously have recognized that the

duty imposed by § 501(a) has its limits. There is a long-standing and soundly based policy of avoiding unnecessary judicial intrusion into the affairs of labor unions. *See Local 48 v. United Brotherhood of Carpenters & Joiners*, 920 F.2d 1047, 1051 (1st Cir.1990); *Motion Picture & Videotape Editors Guild, Local 776 v. Int'l Sound Technicians, etc. Local 695*, 800 F.2d 973, 975 (9th Cir.1986), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 765 (1987); *Jou–Jou Designs, Inc. v. Int'l Ladies Garment Workers Union*, 643 F.2d 905, 911 (2nd Cir.1981); *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir.1975). That general policy is subject to important exceptions in specific areas in which Congress has found the individual members' interests in need of special protection against the danger of overreaching by entrenched union leadership. *Tincher v. Piasecki*, 520 F.2d at 854. While the LMRDA is intended to protect union members against their leaders' overreaching, the statute does not comprise "a license for judicial interference in the internal affairs of a union." *Local 48 v. United Broth. of Carpenters*, 920 F.2d at 1051. The facts now before the court, when viewed in a light most favorable to the defendant, do not fall within the terms of the limited license to intervene in union affairs granted to the court by the LMRDA.

The essence of the plaintiffs' claim under § 501 is that Mr. Benjamin breached his oath of loyalty and engaged in dual unionism in violation of the OP & CMIA Constitution. Courts have recognized a union's interest in maintaining its internal organizational integrity, and have recognized a union's right to impose sanctions against members who engage in dual unionism and violate the terms of a union constitution. *Ferguson v. Int'l Ass'n of Bridge, etc. Workers*, 854 F.2d 1169 (9th Cir.1988). There is no specific authority, however, indicating that a union's right to insist on the loyalty of its members is a right protected by § 501(a). The court has found no instance in which § 501(a) has been invoked successfully against a local officer as a means of enforcing loyalty to an international union or prohibiting "dual unionism".

In *Tile, Marble, Terrazzo Union v. Local 25*, 972 F.2d 738, the Seventh Circuit rejected an international union's § 501(a) claim against a local union and its officers. The court held that a local union's intentional attempt to shield its assets from the international by placing them in a mortuary fund did not constitute a breach of fiduciary duty by the local officers when the mortuary fund was ratified validly by the local membership in accordance with the union constitution. *Id.* At the very least, the reasoning of *Tile, Marble, and Terrazzo Union v. Local 25*, 972 F.2d at 744, appears to foreclose any liability premised on Mr. Benjamin's proposed amendment to the Local 101 pension plan. No evidence indicates that the pension plan amendment proposed by Mr. Benjamin was not validly ratified by the Local 101 membership.

The OP & CMIA tries to distinguish this case by alleging that Mr. Benjamin's actions violated the union constitution. But the proposition that compliance with a union's constitution may shield an officer from liability under § 501 does not establish the converse proposition that every violation of the union constitution constitutes a breach of fiduciary duty actionable under § 501(a).

The plaintiffs' argument implicitly assumes that Mr. Benjamin's duty under § 501(a) included a duty of loyalty to the OP & CMIA. Mr. Benjamin acknowledges that he acted contrary to the International's interests, but argues that the interests of Local 101 and its membership conflicted with the interests of the International leadership. According to Mr. Benjamin, he acted in the best interest of Local 101 and its membership. Viewing the record in Mr. Benjamin's favor, not only is there an unresolved factual issue as to whether any fiduciary duty was breached, but also an unresolved legal issue as to which entity Mr. Benjamin owed his fiduciary duty.

Section 501(a) states that "the officers ... of a labor organization occupy positions of trust to such organization and its members as a group." The OP & CMIA implicitly assumes either that the organizational interests at stake in this case are the interests of the OP & CMIA, or that the interests of the International and Local were identical. The

weight of experience and authority contradicts these assumptions. The Federal Reporters are peppered with cases in which the interests of an International and its local were in direct conflict. *See, e.g., Trustee of Operative Plasterers v. Journeymen Plasterers,* 794 F.2d 1217; *Tile, Marble, Terrazzo Union v. Local 25,* 972 F.2d 738.

█ When the interests of a local and its International conflict, a local union official's fiduciary duty under § 501 attaches primarily to the local union, not the International. Any other result would be contrary to the intent of the LMRDA.

█ The statute's plain language suggests an officer occupies a position of trust as to the organization he represents as an officer. *See* 29 U.S.C. § 501(a). Mr. Benjamin was an officer of Local 101, not the International; accordingly, his duty under § 501(a) was to the Local 101 membership. This reading is consistent with common law principles of fiduciary duty underlying § 501. A fiduciary relationship arises whenever confidence is reposed in one side, and domination and influence result on the other. *See generally Black's Law Dictionary* 626 (6th ed. 1991). The local union's officer occupies a position of domination and influence with respect to the local membership, but not necessarily with respect to the International organization.

█ The legislative history underlying the LMRDA further indicates that Mr. Benjamin's duty under § 501(a) was to Local 101, not the International. Congress passed the LMRDA in response to the McClellan Committee's disclosure of dishonesty and wrongdoing by some of the nation's most powerful labor leaders. *See* H.Rep. No. 741, 86th Cong. 1st Sess. 1–6 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2424–2429. To expose conflicts of interest and stamp out embezzlement and self-dealing by union officials, the LMRDA required unions to comply with certain reporting and disclosure requirements, established new crimes, and codified the fiduciary obligations of union representatives. *McNamara v. Johnston,* 522 F.2d 1157, 1163 (7th Cir.1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976). Because

the intent of the LMRDA was to combat union corruption by increasing union democracy and diffusing the power of union officials, it would be contrary to the intent of the LMRDA to apply § 501(a) as a tool of insuring local officials' compliance with the wishes of the International leadership. Accordingly, an official's duty under § 501(a) is to the organization he represents, not the entity to which he reports.

█ Of course, the OP & CMIA and its officers have the authority, if not the duty, to act on behalf of their local membership and to investigate and root out corruption of their local officials. The court does not intend to downplay the importance of union solidarity to the effective representation of employees' interests. Before finding liability under § 501(a) based on a claim asserted by an international union against a local officer, however, the court must be certain that the interests purportedly represented by the international are consistent with those protected under § 501(a). Because the facts before the court do not indicate clearly whether the OP & CMIA International was acting to protect the interests of Local 101 or on behalf of its own potentially conflicting interests, summary judgment is inappropriate.

Mr. Benjamin's deposition testimony supports an inference that his activities were taken in response to anticipated actions by the International leadership that would have threatened the continued existence of Local 101. The OP & CMIA asserts that Mr. Benjamin's actions were taken with the obvious intent to harm the union's interests, but the record is silent as to the effect of Mr. Benjamin's action on Local 101 or its members' interests. The absence of any complaints from the local membership regarding Mr. Benjamin's conduct undercuts the plaintiffs' breach of duty claim. Without evidence of harm to the local membership caused by Mr. Benjamin's actions, the court hesitates to find that this case represents an exception to the rule of judicial non-intervention in union affairs.

█ The plaintiffs argue that Mr. Benjamin acted for his own personal gain rather than for the interests of his constituency.

Although the record could support the inference that Mr. Benjamin received either direct or indirect benefits from the laborers in return for soliciting defections from the OP & CMIA, the record is devoid of any direct evidence of a quid pro quo arrangement between Mr. Benjamin and the Laborers that would compel such a finding. Drawing all inferences in Mr. Benjamin's favor, as must be done at the summary judgment stage, the record suggests that the Laborers offered jobs for Mr. Benjamin and other Local 101 members with no strings attached. Merely accepting a job with a rival union and telling other union members of job opportunities does not amount to a breach of fiduciary duty.

None of Mr. Benjamin's actions can be said to have been indisputably inconsistent with his fiduciary duty as officer of Local 101. Amending the pension plan did not constitute a breach of duty as long as the amendment was validly ratified by the local membership. *See Tile, Marble, Terrazzo Union v. Local 25,* 972 F.2d at 744. Although discussing job opportunities with a rival union's leadership and informing the Local 101 membership of opportunities available with a rival union may be inconsistent with the principles of loyalty espoused in the OP & CMIA Constitution, it is not necessarily inconsistent with the policies underlying the LMRDA.

Courts have recognized that it is the duty of union leadership as fiduciaries to ensure that the lines of communication and dissemination of views and opinions are kept open and working. *See Stelling v. Int'l Brotherhood of Electrical Workers,* 587 F.2d 1379 (9th Cir.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Blanchard v. Johnson,* 388 F.Supp. 208 (N.D.Ohio 1974), *aff'd in part and rev'd in part on other grounds,* 532 F.2d 1074 (6th Cir.1976); *see generally,* Martha M. Cleary, Annotation, *Conduct of Union Officer Which Violates § 501(a) of Landrum–Griffin Act (29 U.S.C. § 501(a)),* 107 A.L.R.Fed. 448, 492 (1988) (collecting cases). As noted by courts in the context of cases challenging the legality of internal union disciplinary proceedings, the mere fact that a union member is an appointed or elected official does not destroy his right to free expression and assembly under the LMRDA. *Sewell v. Grand Lodge of Int'l Ass'n of Mach. & Aerospace Workers,* 445 F.2d 545, 550–551 (5th Cir.1971), *cert. denied,* 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). "The rights of a union member must be balanced against the right preserved to the union to make rules as to the responsibility of the member toward the union as an institution. And this balancing procedure must rest on the facts." *Sewell v. Grand Lodge of Int'l Ass'n of Mach. & Aerospace Workers,* 445 F.2d at 551; *Airline Maintenance Lodge 702, etc. v. Loudermilk,* 444 F.2d 719 (5th Cir.1971). These competing interests deserve no less consideration when a union seeks the court's assistance in disciplining its officers. Whether Mr. Benjamin acted in accordance with his duties as an officer and the policies of the LMRDA or in derogation of his fiduciary duty is a question of fact, and a reasonable factfinder could find that Mr. Benjamin's actions were consistent with his fiduciary duties under § 501.

Finally, summary judgment is inappropriate because the plaintiffs have not shown that Local 101 suffered any injury that could be redressed by the court. Although Mr. Benjamin's actions may have caused Local 101 to incur expenses, such as the cost of an accounting, recoverable as damages under 29 U.S.C. 501(b), no evidence in the record indicates that Local 101 suffered damage of this sort. *See Teas v. Local 413, Int'l Broth. of Teamsters,* 504 F.Supp. 12 (S.D.Ohio 1978). As admitted by the plaintiffs, "the OP & CMIA was able to prevent the complete devastation planned by Benjamin."

The court recognizes that the plaintiffs seek summary judgment only as to liability; nevertheless, to prove liability under § 501(a) the plaintiffs must demonstrate that evidence exists which would permit the court to make a non-speculative determination of damages. *See Teas v. Local 413,* 504 F.Supp. at 20. Other than general allegations of hardship, the plaintiffs have not specified any injury caused by Mr. Benjamin's actions that could form the basis of relief under § 501(a).

### E. Common Law Breach of Fiduciary Duty Claim

Count VII of the plaintiffs' complaint alleges that Mr. Benjamin breached his fiduciary duty under Indiana common law. The plaintiffs' common law claim is even more tenuous than their federal fiduciary duty claim.

Setting aside issues of federal preemption, the plaintiffs have cited no authority for the proposition that Indiana courts would recognize a fiduciary relationship between a union and its officers. The same concerns that cause the court to question the underlying premise of the plaintiffs' federal claim cast doubt on the legal basis for the plaintiffs' state law claim.

 Sitting in diversity, the court's role is not to create state law, but rather to follow the principles enunciated by the state courts and to predict what ·the Indiana Supreme Court would hold in such a situation. *Miller v. Pardner's Inc.,* 893 F.2d 932, 934 (7th Cir.1990). The cases cited by the plaintiffs provide no indication as to whether the Indiana Supreme Court would find a fiduciary relationship under this case's facts. Accordingly, the court will deny the plaintiffs' motion for summary judgment as to Count VII.

### II. Motion for Reconsideration/Motion for Expenses

On November 16, 1992, the court entered an order compelling the defendant to produce certain documents requested by the plaintiffs during the course of discovery, and directing the plaintiffs to submit a bill of costs incurred in seeking the court's order pursuant to Fed.R.Civ.P. 37(d). Among the documents at issue were check stubs Mr. Benjamin received from the Laborers and Mr. Benjamin's phone bills. Mr. Benjamin asks that the court reconsider its earlier order on the grounds that (1) he does not have the phone records, and (2) he refrained from filing a response to the plaintiffs' motion to compel based on plaintiffs' counsel's oral assurances that the motion would be withdrawn. The plaintiffs object to the defendant's motion for reconsideration, and have filed a motion for expenses incurred in bringing·their motion to compel.

The court recognizes the impracticability of complying with an order to produce documents not in the defendant's possession or control. Accordingly, it modifies its prior order to the extent it seeks the production of documents not in Mr. Benjamin's possession or control, but finds no error as to the remainder of its order. ·

 The plaintiffs' motion to compel was filed on October 22. As of that date, Mr. Benjamin had failed to respond to the plaintiffs' document production requests as provided in Fed.R.Civ.P. 34(b). If Mr. Benjamin could not produce his phone records because they were not in his possession, it was incumbent upon him to make an appropriate objection to the requests in accordance with Fed.R.Civ.P. 34(b). It does not appear from the record before the court that Mr. Benjamin informed the plaintiffs that he did not have the requested documents before the motion to compel was filed. Because the plaintiffs received no response, they were entitled to seek an order compelling discovery under Fed.R.Civ.P. 37(a)(2). Nothing in Mr. Benjamin's motion for reconsideration indicates that he would have been able to assert a valid defense to the plaintiffs' motion had he filed a timely response. Accordingly, pursuant to Fed.R.Civ.P. 37, the plaintiffs were entitled to a court order compelling production and an award of reasonable costs and expenses incurred by Mr. Benjamin's failure to comply with discovery requests.

The plaintiffs have submitted a motion for expenses indicating that they expended $1,681.00 in attorney fees and other costs due to the defendant's failure to timely respond to their discovery requests. Mr. Benjamin objects to this amount on the grounds that the amount of time spent by plaintiffs' counsel drafting the motion to compel was excessive and that the plaintiffs themselves have been dilatory in responding to the defendant's discovery requests. Both objections lack merit. The amount of time spent by plaintiffs' counsel in seeking discovery does not appear unreasonable, and any failure in discovery compliance by the plaintiffs is not relevant to a determination of the costs in-

curred by the plaintiffs due to the defendant's failure to comply with discovery. Accordingly, pursuant to its November 16 order, the court will award the plaintiffs reasonable expenses in the amount of $1,681.00.

### III. *Motion for Protective Order*

The plaintiffs seek a protective order prohibiting Mr. Benjamin from taking the deposition of Harry Martinez or limiting such deposition to a specific time or place. On November 6, Mr. Benjamin noticed the deposition of Mr. Martinez, Vice President Emeritus of the OP & CMIA, to be held in Washington, D.C. on November 14, 1992. Although the notice was dated November 6, the plaintiffs did not receive the notice until November 10, 1992. This represented Mr. Benjamin's second attempt to notice Mr. Martinez's deposition.

With respect to the defendant's initial attempt to depose Mr. Martinez, Magistrate Judge Pierce, in an order dated October 16, found that because Mr. Martinez was a retired officer of the OP & CMIA, he had no authority to testify on the International's behalf and the International had no obligation to produce him for a deposition on its behalf. Accordingly, the Magistrate Judge granted the plaintiffs' motion for protective order and ruled that Mr. Benjamin would have to proceed with any deposition of Mr. Martinez as in the case of any other individual non-party witness residing beyond this court's subpoena power.

Mr. Martinez currently resides in California; therefore, Mr. Benjamin's attempt to notice his deposition in Washington, D.C. clearly violates the Magistrate Judge's protective order. Mr. Benjamin contends that the Magistrate Judge's order was based on an erroneous set of facts, and that further discovery has revealed that Mr. Martinez, contrary to the Magistrate Judge's finding, is an OP & CMIA officer because he periodically takes assignments from the General President of the Union, and that the failure to accept such assignments without justification could subject Mr. Martinez to removal from office.

Even assuming that the periodic acceptance of assignments makes Mr. Martinez an officer, no excuse exists for Mr. Benjamin's failure to seek leave of court to take Mr. Martinez's deposition in light of the newly discovered evidence. The Magistrate Judge held that Mr. Martinez could not be deposed as an officer of the OP & CMIA, and Mr. Benjamin proceeded to act in derogation of that order, without obtaining leave of court to do so. Moreover, that Mr. Martinez theoretically could be stripped of his ceremonial title and not offered further discretionary assignments if he disobeyed the orders of the present OP & CMIA president does not indicate to the court that the plaintiffs had the authority to compel Mr. Martinez to travel to Washington, D.C. to be deposed. Accordingly, the plaintiffs had no obligation to produce Mr. Martinez for deposition in Washington, D.C., and are entitled to a protective order quashing the deposition notice.

The court further finds that the plaintiffs are entitled to an order barring any future attempt to depose Mr. Martinez. The deadline for the completion of discovery was October 1, 1992. Magistrate Judge Pierce granted Mr. Benjamin until November 4 to take the deposition of officers Beam, Panepinto, and Martell, but made no specific order with respect to any deposition of Mr. Martinez. Had Mr. Benjamin tried to depose Mr. Martinez in accordance with the terms of the Magistrate Judge's order, the court would have been inclined to grant leave of the discovery deadline for the purpose of deposing Mr. Martinez. Because Mr. Benjamin did not comply with the Magistrate Judge's order, the court declines to offer Mr. Benjamin another opportunity to depose Mr. Martinez. Both sides have had ample time to complete discovery, and the court sees no reason to prolong this matter any further.

The plaintiffs further request that the court award them expenses incurred in obtaining the protective order pursuant to Fed. R.Civ.P. 37(a)(4). Mr. Benjamin has not offered substantial justification for his failure to comply with the Magistrate Judge's order or the court's discovery deadline, and has offered no reason why such an award of expenses would be unjust. Accordingly, the plaintiffs are entitled to recover their expenses.

To avoid additional unnecessary expense incurred litigating the appropriate amount of the sanction, the court finds, based on the expenses incurred by the plaintiffs in previous discovery disputes, that $500.00 is a reasonable estimate of the expenses incurred in obtaining the protective order.

### IV. *Conclusion*

For the foregoing reasons, the court hereby orders as follows:

(1) the plaintiffs' motion for summary judgment is DENIED;

(2) the defendant's motion for reconsideration is DENIED;

(3) the plaintiffs' motion for expenses incurred with respect to their motion to compel is GRANTED in the amount of $1,681.30;

(4) the plaintiffs' motion for protective order is GRANTED, and, in connection therewith, the court orders that no further discovery may be conducted in this case, and further ORDERS the defendant to pay the plaintiffs $500.00 as expenses incurred in obtaining the protective order; and

(5) defendant James Benjamin is ORDERED to pay the aforementioned discovery sanctions (in the total amount of $2,181.30) within twenty (20) days of the date of this order.

SO ORDERED.