Gwendolyn FERGUSON; Miguel R. Tinker–Salas; Robert P. Bilodeau; Pedro Cordoba; Ernest Green, Plaintiffs-Appellants,

v.

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS; John H. Lyons; Jule D. Drake; Charles R. Anding; Leroy Worley, Defendants-Appellees.

No. 87–6314.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 17, 1988.

Decided Aug. 18, 1988.

Dan Siegel, Siegel, Friedman & Yee, Oakland, Cal., for plaintiffs-appellants.

Victor J. Van Bourg, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for defendants-appellees.

Before GOODWIN, Chief Judge, ALDISERT *, Senior Circuit Judge, NORRIS, Circuit Judge.

NORRIS, Circuit Judge:

Section 101(a)(2) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(2), protects

---

* The Honorable Ruggero J. Aldisert, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

· union members' rights to free speech and assembly while preserving the rights of unions to adopt and enforce reasonable rules governing the responsibilities of members towards their unions as institutions. Specifically, section 101(a)(2) provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis in original). The major question in this appeal is whether a union violated this statute in disciplining several of its members.

## I. BACKGROUND

Ferguson, Tinker–Salas, Bilodeau, Cordoba and Green (appellants) were members of the International Association of Bridge, Structural and Ornamental Iron Workers (the International) and its San Diego affiliate, Local 627. They were employed under a collective bargaining agreement by the National Steel and Shipbuilding Company (NASSCO). Local 627 was the designated bargaining agent for NASSCO. In December 1980, Ferguson and Tinker–Salas were elected to serve as Local 627 officers. They never assumed office because in early 1981 the International placed Local 627 under a trusteeship, a decision which appellants actively opposed.[1]

Shortly after the trusteeship was imposed, appellants formed a rival union, the United Shipyard Workers Union Local 1 (USWU), and served on its executive board. Appellants began to distribute authorization cards and leaflets urging Local 627 members to join USWU. On July 7, 1981, appellants requested NASSCO to recognize the rival union as the employees' bargaining agent. As a result, NASSCO refused to negotiate with either union. On July 8, 1981, appellants filed a representation petition with the NLRB. The NLRB then conducted a representation hearing and scheduled an election between Local 627 and the USWU. Appellants actively supported the USWU in the election campaign, urging union members to vote against Local 627. In September, 1981, the NASSCO employees chose Local 627 over the USWU in the NLRB election.

On May 1, 1982, Worley, the Local 627 trustee, filed internal charges against appellants pursuant to the International's constitution. Worley charged appellants with: 1) advocating and attempting to bring about withdrawal of members from Local 627; 2) inciting or attempting to incite dissatisfaction or dissension among Local 627 members by distributing handouts and leaflets, making false and misleading statements, advocating and counseling "the undermining of the authority of [Local 627] in pursuit of its lawful business," Excerpt of Record (ER) at 71, and accusing Worley of being a thug and of "non-representation on behalf of [Local 627];" *id.*, and 3) injuring the union by hampering its efforts to negotiate with NASSCO, *id.* at 70–71. Following an internal hearing, the hearing officer recommended that each appellant be found guilty on all charges and disciplined. The International's General Executive Board, found appellants "guilty of each and every charge preferred against [them] by ... Worley," *id.* at 78, stating that it had

> weighed very carefully your right of free speech as against the right of both the union as an unincorporated association

---

1. Local 627 and several appellants filed suit to enjoin the trusteeship. Injunctive relief was denied.

and as a collective body ... to preserve itself.... [W]hile every member has the right to free speech, including the right to criticize his or her local, the International or the leaders of either, he or she does not have the right to exercise it in such a way while a member of the organization so as to convince others to join [ ] a rival organization.... The General Executive Board unanimously decided that you had exceeded your right of free speech and tried to destroy [Local 627] through [ ] decertification....

*Id.* at 77–78. The General Executive Board expelled Tinker–Salas from the union, suspended the other four appellants, and imposed fines ranging from $500 to $3,000.

Appellants brought this action in district court against the International and four of its officers (appellees). First, appellants alleged that the discipline violated their free speech rights protected by LMRDA, section 101(a)(2). Second, they alleged that the International and its officers had violated their rights to an impartial hearing and to participate in union activities, and that they were denied the right to a hearing by jury guaranteed under the International's constitution. *See* LMRDA, section 101(a)(5), 29 U.S.C. § 411(a)(5). Appellants sought damages as well as injunctive and declaratory relief.

Appellees moved for summary judgment. To determine whether it was permissible for the union to discipline appellants' conduct, the district court applied the two-step test[2] set forth in *United Steelworkers v. Sadlowski*, 457 U.S. 102, 110, 102 S.Ct. 2339, 2344, 72 L.Ed.2d 707 (1982), the leading Supreme Court case interpreting section 101(a)(2). First, the district court inquired whether the discipline potentially interfered with an interest protected under section 101(a)(2), ER at 28, and determined that appellants were punished for "protect-

ed speech." ER at 30. Specifically, the district court stated that appellants'

leaflets, handouts and letters to Local 627 members, as well as their conduct in distributing the materials are protected speech; they criticized the union leadership and exercised the right to advocate change.

*Id.* at 29–30 (footnote omitted).

Second, the district court considered whether it was reasonable for the International to discipline appellants for their conduct. *Id.* at 30–31. It concluded that the discipline did not violate the statute because it "was reasonably related to protecting internal organizational integrity." *Id.* at 30. In supporting this conclusion, the court explicitly noted that

undisputed facts demonstrate that plaintiffs' activities constituted dual unionism. Because of these activities, NASSCO temporarily refused to meet or negotiate with Local 627, which clearly impaired the union's ability to represent its members and interfered with the union's contractual obligations.

*Id.* at 30–31 (footnote omitted).

After determining that appellants had engaged in conduct which could be lawfully disciplined under the statute, the district court then examined whether the particular discipline was reasonable under the circumstances. The court concluded that the suspensions and expulsion were "reasonable, defensive discipline," *id.* at 34, and granted summary judgment in favor of appellees, holding that the suspensions and expulsion were lawful under section 101(a)(2). However, because the court was unable to determine whether the fines were defensive or punitive in nature, it ruled that appellees were not entitled to summary judgment on the question whether the fines were lawful under the statute. *Id.* at 34, 37–38. In

---

**2.** The Court described the two-step test as follows:

To determine whether a union rule is valid under the statute, we first consider whether the rule interferes with an interest protected by the first part of § 101(a)(2). If it does, we then determine whether the rule is "reasonable" and thus sheltered by the proviso to

§ 101(a)(2).... *The critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution.*

*Sadlowski,* 457 U.S. at 111–12, 102 S.Ct. at 2345–46 (emphasis supplied).

granting partial summary judgment, the district court also held that appellants received a full and fair union hearing under LMRDA, section 101(a)(5). *Id.* at 39.

After holding a bench trial on the remaining issues, the district court found that appellants had abandoned the International and that fines were appropriate because other forms of discipline would have had "little deterrent effect." *Id.* at 66. It concluded that "the fines were defensive in nature, reasonably related to maintaining the internal organizational integrity of the union and therefore permissible [under section 101(a)(2)]." *Id.* at 67. The district court also concluded that appellants had attempted to exhaust their internal union remedies. *Id.* at 62.

## II. JURISDICTION

■ Appellants filed a notice of this appeal on August 14, 1987, well within thirty days of entry of final judgment on July 28, 1987. Nonetheless, appellees argue that the appeal was not timely filed because appellants should have appealed from the district court's April 14, 1987 Findings of Fact and Conclusions of Law,[3] not the separate judgment entered by the clerk of the court on July 28, 1987. Appellees' argument is frivolous. Fed.R.App.P. 4(a) requires that a notice of appeal be filed within thirty days after the date of entry of the judgment or order appealed from. A judgment or order is not entered within the meaning of Fed.R.App.P. 4(a) unless it is entered in compliance with Fed.R.Civ.P. 58, which explicitly requires that the judgment

be set forth on a separate document. Because the July 28, 1987 judgment is the separate document, the filing of which constitutes "entry" under Rule 4, appellants' notice of appeal was timely filed. *See Paddack v. Morris*, 783 F.2d 844, 846 (9th Cir.1986) (five-line supplemental judgment was separate document, the entry of which began time for appeal under Fed.R.App.P. 4); *see also United States v. Indrelunas*, 411 U.S. 216, 221–22, 93 S.Ct. 1562, 1564–65, 36 L.Ed.2d 202 (1973) (per curiam) (requirements of Fed.R.App.P. 4 and Fed.R. Civ.P. 58 must be mechanically applied).[4]

## III. LAWFULNESS OF THE DISCIPLINE UNDER SECTION 101(a)(2)

On appeal, appellants do not contest the district court's determination that the union could impose some penalty upon them for engaging in dual unionism, and that the expulsion and suspensions constituted reasonable discipline for such conduct. Appellants' Opening Brief at 11. Appellants rest their appeal on two discrete arguments: First, appellants contend that they were disciplined not only for dual unionism, but also for criticizing a union official and engaging in other speech. Appellants argue that as union members, their speech was absolutely protected under section 101(a)(2) and that, as a result, they are immune from any discipline on charges that they engaged in *both* dual unionism and speech. Second, appellants contend that, in any case, the fines constituted an unreasonable penalty even for engaging in dual unionism.

---

3. The Findings of Fact and Conclusions of Law states, "Thus, judgment shall be entered in favor of Defendants and against Plaintiffs." ER at 67.

4. With one exception, the cases upon which appellees rely, *Carnes v. United States,* 279 F.2d 378, 379 (10th Cir.), *cert. denied,* 364 U.S. 846, 81 S.Ct. 88, 5 L.Ed.2d 69 (1960), *Beacon Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board,* 266 F.2d 246, 248 (7th Cir.), *cert. denied,* 361 U.S. 823, 80 S.Ct. 70, 4 L.Ed.2d 67 (1959), and *United States v. Wissahickon Tool Works,* 200 F.2d 936, 938 (2d Cir.1952), pre-date the 1963 revision of Fed.R.Civ.P. 58 providing that the judgment be set forth on a separate

document. The only recent case cited, *Beaudry Motor Co. v. ABKO Properties, Inc.,* 780 F.2d 751 (9th Cir.), *cert. denied,* 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986), fails to support appellees' position. In *Beaudry,* the clerk prepared, signed and entered a separate order but the appellant argued it was insufficient under Rule 58 because the copy sent to counsel was not signed. *Id.* at 754. The court held that the unsigned copy was sufficient to put appellant on notice that the order had been entered. *Id.* at 754–55. *Beaudry* is not authority for appellees' contention that a separate document is not required under Rule 58.

**1174**

## A. Lawfulness of the Suspensions and Expulsion [5]

Appellants were charged with a variety of conduct. For example, they were explicitly charged with handing out leaflets, making statements and calling Worley a "thug." ER at 70–71. Appellants were also charged with dual unionism, *i.e.*, attempting to destroy Local 627 by establishing and championing a rival union and directly interfering with Local 627's ability to perform as bargaining agent by requesting NASSCO to recognize the USWU as bargaining agent. *Id.* The General Executive Board found appellants guilty on all charges.

Appellants argue that the discipline as a whole is unlawful because they were disciplined not only for dual unionism, but also for criticizing a union officer which they claim is absolutely protected by section 101(a)(2). We disagree. Section 101(a)(2) protects not only the rights of union members to express their views and to assemble. It also expressly recognizes the competing interests of unions by preserving a union's right to "adopt and enforce reasonable rules as to [members' responsibility] toward the organization as an institution and ... conduct that would interfere with [the union's] performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2). Appellants were charged with conduct which threatened the union as an institution and interfered with the union's duties as collective bargaining agent. To be sure, they were also charged with criticizing a union official and engaging in other speech. We believe, however, that the essential element of the charges is dual unionism, not speech. We believe that unions may reasonably regulate speech which is part of a pattern of conduct designed to destroy the union and to interfere with the performance of its legal obligations. We therefore hold that the fact

that speech critical of a union officer is protected under section 101(a)(2) does not immunize appellants from discipline for both dual unionism and speech.

The cases cited by appellants do not support their position. In *Rollison v. Hotel, Motel, Restaurant, and Construction Camp Employees, Local 879*, 677 F.2d 741, 745–46 (9th Cir.1982), for example, we held that section 101(a)(2) does not permit discipline of union members' statements criticizing union officers.[6] *Rollison* is inapposite, however, because the union member's statements were made in the context of an internal union struggle, and we explicitly noted that "no impairment of the union's ability to function is indicated." 677 F.2d at 746. Here, appellants' statements were part of a pattern of conduct designed to impair the union's ability to function as the collective bargaining representative for NASSCO employees.

Appellants also rely extensively on *Petramale v. Local 17 of Laborers International Union*, 736 F.2d 13 (2d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 593, 83 L.Ed.2d 702 (1984), in which the Second Circuit considered the section 101(a)(2) claims of a union member who was disciplined for both criticizing and slandering a union officer and disrupting a union meeting. After observing that criticism of union officers, even when it amounts to slander, is protected under section 101(a)(2), *id.* at 17 (citing *Salzhandler v. Caputo*, 316 F.2d 445, 450 n. 7 (2d Cir.), *cert. denied*, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963)), the court held the discipline invalid because criticizing and slandering the union official was the "essential element" of the charges, and the charges for speech and disruption were "inextricably intertwined." *Id.* at 18. The court refused to uphold the discipline solely on the basis of the disruptive conduct, reasoning that the charges for disruption could not be differ-

---

5. We review *de novo* the district court's summary judgment that the suspensions and expulsion did not violate section 101(a)(2). *See Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986).

6. Specifically, the union member was charged with and punished for using foul language toward union officers, threatening union staff, holding unauthorized meetings with other union members, and circulating derogatory stories about union officers to union members and the media. 677 F.2d at 743.

entiated from the charges for criticizing the union official. *Id.*

We believe that *Petramale* is inapposite. First, unlike in *Petramale,* here the essential element of the charges is not speech but dual unionism. Moreover, as in *Rollison,* the speech in *Petramale* was not part of a campaign to displace the union as the bargaining representative with a rival union. Rather, the member's statements were made in the context of a dispute between two rival factions within the local union. 736 F.2d at 15. Here appellants were not just subverting the leadership of the union, they were subverting the union as an institution.

We recognize that both *Rollison* and *Petramale* contain language to the effect that some speech is absolutely protected and not subject to *any* discipline by unions, thus suggesting that the protection of a union member's free speech under section 101(a)(2) is broader in scope than under the First Amendment. *See also Salzhandler v. Caputo,* 316 F.2d at 449–51. We note, however, that this approach is at odds with *United Steelworkers v. Sadlowski* [7] in which the Supreme Court said that because the section 101(a)(2) proviso expressly permits reasonable union rules that interfere with the "interests" set forth in the first half of section 101(a)(2), Congress did not intend those interests to be identical in scope to First Amendment rights. 457 U.S. at 111, 102 S.Ct. at 2345. The Court explained that while a "compelling state interest" test is applied to government regulations which infringe upon First Amendment rights, union rules which infringe upon section 101(a)(2) interests "are valid ... so long as they are reasonable." *Id.* We need not resolve this apparent tension in the caselaw, however, because we find this case to be distinguishable from both *Rollison* and *Petramale* in that the essen-

tial element of the charges here is dual unionism.

We also note what we do not decide today. We do not decide, for example, whether a union member may be disciplined for urging his fellow workers to vote to decertify the union or to vote in favor of a rival union. Our holding today is limited to the facts of this case, a situation in which a union has disciplined union members who established a rival union, became its leaders and promoted it, and interfered directly with the union's efforts to function as an institution. Congress expressly recognized that every union member has a responsibility to the union "as an institution," 29 U.S.C. § 101(a)(2), and we believe appellants violated that responsibility in this case.

In sum, we are unpersuaded by appellants' argument that their speech is absolutely protected and that as a result their conduct is immune from discipline under section 101(a)(2). We hold that appellants' conduct—dual unionism and the speech incident thereto—is subject to reasonable discipline under section 101(a)(2). As noted above, appellants do not argue that suspension or expulsion is unreasonable discipline for engaging in dual unionism. *See* Appellants' Opening Brief at 11–12. We agree with the district court that the suspensions and expulsion were reasonable and hold that the district court did not err in granting summary judgment on this issue.

### B. Lawfulness of the Fines

Following a bench trial, the district court concluded that "the fines were defensive in nature, reasonably related to maintaining the internal organizational integrity of the Union and therefore permissible." [8] ER at 67. Although appellants concede that they engaged in dual unionism, they contend that the district court erred in upholding the fines. They argue that the

---

7. *Sadlowski* was decided after *Rollison,* but before *Petramale. Petramale* does not discuss *Sadlowski.*

8. Because the district court's determination that the fines were reasonable under section 101(a)(2) presents a mixed question of fact and law in which the legal issues predominate, we

review it *de novo. See United States v. McConney,* 728 F.2d 1195, 1204 (9th Cir.1984) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We will not set aside the district court's findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a).

fines were unreasonable as a matter of law. In support of this contention appellants rely on *Airline Maintenance, Lodge 702, International Ass'n of Machinists and Aerospace Workers v. Loudermilk,* 444 F.2d 719 (5th Cir.1971), and *Ballas v. McKiernan,* 35 N.Y.2d 14, 358 N.Y.S.2d 695, 315 N.E.2d 758, *cert. denied,* 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309 (1974). In *Loudermilk,* the Fifth Circuit held that a fine imposed upon a union member who had taken a leadership position in a rival union violated section 101(a)(2). 444 F.2d 723-24. Relying on *Loudermilk,* the New York Court of Appeals in *Ballas* similarly held that fines imposed against a union member who had supported a rival union in a representation election violated section 101(a)(2). 35 N.Y.2d at 21, 358 N.Y.S.2d 695, 315 N.E.2d 758. Appellees respond that *Loudermilk* and *Ballas* are distinguishable, that section 101(a)(2) does not prohibit fines for dual unionism, and that the district court did not err in finding that the fines were reasonable. We agree.

We agree with appellees that *Loudermilk* and *Ballas* are distinguishable for two reasons. First, the union members in *Loudermilk* and *Ballas* were employed under a union shop provision pursuant to the Railway Labor Act, 45 U.S.C. § 152. *See Loudermilk,* 444 F.2d at 720; *Ballas,* 35 N.Y.2d at 17, 20-21, 358 N.Y.S.2d 695, 315 N.E.2d 758. Because of the union shop provision, the union members would have lost their jobs as well as their union membership had they refused to pay the fines. *See Loudermilk,* 444 F.2d at 723-24 (fines "exceeded the authority of the union under the circumstances here which involve compulsory membership under a union shop agreement coupled with free speech overtones"), *Ballas,* 35 N.Y.2d at 21, 358 N.Y.S. 2d 695, 315 N.E.2d 758. In this case, Local 627 is not organized under the Railway Labor Act, but under the National Labor Relations Act (NLRA). Although the NLRA authorizes employers to require union membership as a condition of employment, it expressly prohibits employers from discriminating against employees for nonmembership "if ... membership was denied or terminated for reasons other than

the failure to [tender dues or initiation fees.]" 29 U.S.C. § 158(a)(3)(B). Thus, appellants' employment cannot be terminated for nonpayment of the fines.

Second, in both *Loudermilk* and *Ballas* the union member's conduct did not interfere with the union's position vis-a-vis the employer. The New York Court of Appeals in *Ballas* explicitly noted that the union member's conduct had not affected the union's relationship with the employer: "[T]he contested issue is between the rights of the individual members and the interests of the union. The rights and interests of the union as against third parties are only tangentially involved." 35 N.Y.2d at 20, 358 N.Y.S.2d 695, 315 N.E.2d 758. In the case at hand, however, appellants directly interfered with Local 627's relationship with NASSCO.

■ Because appellants' employment rights are not affected by the fines and their conduct undermined Local 627's collective bargaining position, we agree with appellees, and with the district court, that *Loudermilk* and *Ballas* are not directly on point. As the Fifth Circuit said in *Loudermilk,* "the rights of the union member under this statute must be balanced against the right preserved to the union to make rules as to the responsibility of the member toward the union as an institution, and this balancing process must rest on the facts." 444 F.2d at 723; *see also Ballas,* 35 N.Y.2d at 19, 358 N.Y.S.2d 695, 315 N.E.2d 758 (permissibility of fines for dual unionism rests on proper balancing of competing interests). The district court's findings that appellants' purpose was to destroy the union rather than to reform it and that the fines were defensive in nature are not clearly erroneous. In light of these facts, we agree with the district court's conclusion that the fines were "reasonably related to maintaining the internal organizational integrity of the Union...." ER at 67. Thus, we affirm the district court's ruling that appellees did not violate section 101(a)(2) in imposing the fines.

## IV. RIGHT TO A FAIR HEARING UNDER SECTION 101(a)(5)

Appellants also contend that they were deprived of their right to a fair union hear-

ing under LMRDA, section 101(a)(5).[9] The district court held that appellants had not made a sufficient showing to demonstrate that there was a genuine issue of fact concerning the fairness of the hearing or the impartiality of the General Executive Board.[10]

On appeal, appellants argue that they were denied a fair hearing because the members of the International's General Executive Board, which made the final decision to discipline them, were biased. Appellants concede that the relevant facts are not in dispute but seem to argue that they are entitled to a judgment as a matter of law. *See* Appellants' Opening Brief at 16–17. Appellants base their claim of bias on the following: 1) Appellants were outspoken critics of the International; 2) the International manifested hostility against appellants by imposing the trusteeship after Ferguson and Tinker–Salas criticized the International while campaigning for union office; 3) appellants brought suit against the International for imposing the trusteeship; and, 4) the International's President decided that the General Executive Board, rather than a jury of union members, would adjudicate the charges against them.

■ We agree with the district court that appellants have not made a showing sufficient to demonstrate that there was a genuine issue of fact concerning the impartiality of the individual members of the General Executive Board. The fact that the charges were not adjudicated by a jury does not show bias on the part of General Executive Board members because the International's constitution provides that charges against a union member may be heard either by a jury or by the General Executive Board and authorizes the President to choose the tribunal.[11] Appellants argue that the right to a fair hearing is violated when an official whom a member has criticized participates in a hearing against the member. *See Tincher v. Piasecki*, 520 F.2d 851, 855 (7th Cir.1975) (noting high probability of bias where adjudicator has been personally criticized by accused). Appellants make no showing, however, that any member of the General Executive Board was personally criticized by them. In absence of a showing of such personal criticism, we believe the district court was correct in holding that appellees were entitled to summary judgment on this issue.

## V. DISMISSAL OF INDIVIDUAL UNION OFFICIALS

Appellants challenge the district court's in limine dismissal of the union officers in their individual capacities. Appellants' claims against the individual officers are identical to their claims against the International. Thus, in affirming the judgment in favor of the International, we necessarily affirm the judgment in favor of the individual appellees.

AFFIRMED.

---

**9.** Section 101(a)(5) provides:

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined ... unless such member has been (A) served with written specific charges; (B) given reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

**10.** We review the district court's summary judgment on this issue *de novo. See Ashton*, 780 F.2d at 818.

**11.** Appellants do not suggest that the hearing officer, who heard the evidence and recommended that appellants be found guilty, was biased or that the hearing was unfair.