**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SERVICES EMPLOYEES INTERNATIONAL UNION; DAVID REGAN; ELISEO MEDINA, as Trustees for SEIU United Healthcare Workers-West and fiduciaries of the SEIU United Healthcare Workers-West and Joint Employer Education Fund; SEIU UNITED HEALTHCARE WORKERS-WEST, an unincorporated association and fiduciary of the SEIU United Healthcare Workers-West and Joint Employer Education Fund; REBECCA COLLINS, as a participant in the SEIU United Healthcare Workers-West and Joint Employer Education Fund, *Plaintiffs-Appellees*, v. NATIONAL UNION OF HEALTHCARE WORKERS; JOHN BORSOS; SAL ROSSELLI; JOHN VELLARDITA; RALPH CORNEJO; MARTI GARZA; GLENN GOLDSTEIN; JASON JOHNSON; MARK KIPFER; GABE KRISTAL; JORGE RODRIGUEZ; FRED SEAVEY; PHYLLIS WILLETT, *Defendants-Appellants*. | No. 10-16549 D.C. No. 3:09-cv-00404-WHA ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued June 13, 2012
Submitted March 26, 2013
San Francisco, California

Filed March 26, 2013
Amended May 22, 2013

Before: Ronald M. Gould, Richard C. Tallman,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Labor Law

The panel affirmed the district court's judgment, after a jury trial, in an action under § 501 of the Labor Management Reporting and Disclosure Act against local union officials who diverted union resources in an attempt to establish a new competing local union.

The panel held that § 501 creates a fiduciary duty to the union as an organization, not merely to the union's rank-and-file members. The panel held that in actively attempting to

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

obstruct the international union executive committee's decision to consolidate all of its California unionized long-term healthcare workers from three different local unions into one, the local union officials breached the fiduciary duty they owed their own union as an organization. This breach involved a pattern of conduct of engaging in dual unionism that was not protected speech. Because this breach contravened the union's constitution, it could not have been authorized.

The panel also held that the district court did not err in excluding evidence, nor in issuing a permanent injunction. In addition, the district court did not err in reading the verdict to impose several liability, and not joint-and-several liability, on the defendants.

**COUNSEL**

Dan Siegel, Siegel & Yee, Oakland, California, for Defendants-Appellants.

Jeffrey B. Demain & Jonathan Weissglass, Altshuler Berzon LLP, San Francisco, California; Robert M. Weinberg, W. Gary Kohlmann, Leon Dayan, and Ramya Ravindran, Bredhoff & Kaiser, PLLC, Washington, D.C.; Glenn Rothner, Rothner, Segall & Greenstone, Pasadena, California, for Plaintiffs-Appellees.

## ORDER

The Opinion filed on March 26, 2013, is amended as follows:

Slip opinion page 9, lines 17–18: Replace <damages> with <California state law>

Slip opinion page 9, line 25: After <NUHW was assessed damages of $724,000>, insert <for aiding and abetting, participating in, or knowingly benefitting from a breach of duty under California law>

Slip opinion page 28, line 5: After <under § 501 of the LMRDA>, insert <and California state law>

With this amendment, the panel has voted to deny the petition for panel rehearing and to deny the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and petition for rehearing en banc are **DENIED**. No future petitions for rehearing or petitions for rehearing en banc will be entertained.

**OPINION**

TALLMAN, Circuit Judge:

This appeal presents a classic union power struggle. We must resolve whether § 501 of the Labor Management Reporting and Disclosure Act creates a fiduciary duty to the union as an organization, not merely the union's rank-and-file members. We hold that it does.

The defendants, who by jury verdict[1] were determined to be rogue local union officials who diverted union resources in an attempt to establish a new competing local union, breached this duty. The international union's executive committee had decided to consolidate all of its California unionized long-term healthcare workers from three different local unions into one. The defendants actively attempted to obstruct this consolidation, breaching the fiduciary duty they owed their own union as an organization. This breach involved a pattern of conduct of engaging in dual unionism that is not protected speech. Because this breach contravened the union's constitution, it could not have been authorized. We affirm the jury's verdict and uphold its award of damages.

**I**

The Services Employees International Union ("SEIU") consists of 2.2 million members who work in healthcare,

---

[1] Because a jury heard three weeks' worth of evidence before rendering its finding that the defendants were liable, we recite the facts and all reasonable inferences therefrom in the light most favorable to the verdict. *See Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).

public services, and property services. United Health Workers ("UHW") is one of many "local" unions affiliated with SEIU. At the time its dispute with the international union arose, UHW represented approximately 150,000 healthcare workers in California.

The SEIU constitution, which is binding on UHW, defines the relationship between SEIU and UHW. The SEIU constitution vests SEIU's International Executive Board with authority regarding alignment and jurisdiction of local unions like UHW. For at least the last decade, SEIU has regularly merged and realigned local unions.

## A

The UHW itself was formed as the result of SEIU's merger of two local healthcare unions in California in 2005. Harmony between the international and its newly created local union was short-lived. Shortly after UHW's creation, UHW officials began to spar with SEIU leadership over SEIU's jurisdictional plan for long-term care workers in California. The international union intended to move 150,000 long-term care workers from three separate unions, including some 65,000 from UHW, into a new local union chartered by SEIU.

The controversy began to heat up in 2008. In January of that year, an SEIU executive vice president issued a report concluding that long-term care workers would be better served if they had a union of their own. On January 25, 2008, the UHW Executive Board passed a resolution instructing UHW officers "to take any and all appropriate measures" to protect the ability of UHW long-term care workers to vote on any plans to split them into a new union. For good measure,

the UHW Executive Board passed an additional, similarly worded measure in March 2008.

SEIU decided to appoint a "hearing officer" in early 2008 to further analyze the long-term care workers issue. In August 2008, the hearing officer released his findings, endorsing the creation of a new SEIU union of long-term care workers. Based on this recommendation and other findings, SEIU's International Executive Board issued a written resolution on January 9, 2009, directing consolidation of long-term care workers into a new California union.

**B**

As the long-term care worker realignment controversy accelerated and tensions escalated between officials of the international union and UHW, SEIU began to consider placing UHW into "trusteeship." The SEIU constitution grants SEIU the authority to place a local union into trusteeship "to protect the interests of the membership" from local union malfeasance. Instituting a trusteeship allows SEIU to appoint new officers to "take charge and control of the affairs of a Local Union" with the "effect of removing the officers of the Local Union." Essentially, a trusteeship allows the parent union to replace the existing local union leadership.

In August 2008, while SEIU's appointed hearing officer was recommending the realignment of UHW's long-term care workers, SEIU convened a hearing to discuss whether to place UHW in trusteeship. Former United States Secretary of Labor Ray Marshall presided over the trusteeship hearing. Secretary Marshall eventually issued his report on January 21, 2009, twelve days after SEIU had adopted its realignment plan. The report recommended that UHW be placed into

trusteeship if it "refuse[d] to abide by and cooperate with" SEIU's realignment decision regarding long-term care workers. Secretary Marshall suggested that UHW be given five days to accept the long-term care decision or face trusteeship.

The SEIU International Executive Board approved Secretary Marshall's recommendations on January 22, 2009, giving UHW until January 27, 2009, to confirm in writing that it would not oppose the creation of the new long-term care workers union. The UHW would not so promise, and SEIU placed UHW into trusteeship on January 27, 2009.

## C

The jury found that the defendants did not take these developments kindly. Before the controversy reached its climax, the defendants, local UHW officials, took a number of actions that SEIU proved at trial violated the officials' fiduciary duties to UHW. The jury, by its verdict, found that defendants, while still employed as UHW officers, engaged in action designed to weaken UHW in the event of a trusteeship while acting to form and promote a rival union.

The evidence at trial showed that UHW officials sought to create an ungovernable situation for trustees appointed to administer UHW by: (1) blocking access to UHW buildings to prevent the SEIU-appointed trustees from entering; (2) removing UHW property from UHW buildings, including office equipment, computers, and employee grievance files; (3) instructing lower-level UHW officials and rank-and-file members not to recognize the authority of the trustees; (4) harassing SEIU staff by storming SEIU's Alameda,

California, office; and (5) terminating UHW collective bargaining agreements with California employers.

At the same time, the defendants, while still on the UHW payroll, began to create and promote the new union. The evidence showed that the defendants: (1) searched and prioritized office space for the new union in December 2008 and January 2009; (2) instructed staff to collect signatures on a "disaffiliation" petition in an attempt to disaffiliate UHW from SEIU; (3) researched the "decertification" of UHW, which would have terminated UHW's role as collective bargaining agent for its members, thus allowing a new union to become the bargaining representative of those members; (4) announced to members three days before the trusteeship was imposed that members could decertify and join a "new, independent, democratic, progressive union;" (5) created an off-line database of member contact information before the trusteeship was imposed for use after the trusteeship went into effect, at least in part to solicit UHW members to join the new union; and (6) registered the domain NUHW.org and drafted a press release announcing the new union on January 27, 2009, the day the UHW trusteeship was imposed.

Within a week after the trusteeship was announced, the individually named defendants had created the National Union of Healthcare Workers ("NUHW") and had filed petitions to have UHW removed as the bargaining representative for its current members.

### D

Litigation began in March 2009 when SEIU sought a temporary restraining order ("TRO") from the United States District Court for the Northern District of California requiring

the return of all UHW property possessed by the defendants. The defendants resisted the TRO on the grounds that they did not possess any UHW property. The defendants argued that, because they did not possess any property, a TRO would be "an exercise in futility." Still, SEIU prevailed, a TRO issued, and the defendants appealed. We previously upheld the issuance of injunctive relief on appeal. *Serv. Emps. Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1072 (9th Cir. 2010).

Notwithstanding counsel's representations that the defendants possessed no UHW property, the defendants eventually returned scores of boxes of records belonging to UHW. SEIU claimed that not all missing property had been returned, and the district court granted a permanent injunction extending the TRO's requirement that the defendants return all UHW property.

The case proceeded to trial on SEIU's claims for breach of fiduciary duties under § 501 of the LMRDA and California state law. In the spring of 2010, the case was tried before a jury, which found in favor of SEIU. The jury returned a verdict awarding damages against the individual defendants in various amounts, and the district court entered judgment against the defendants for varying amounts awarded by the jury. The individual judgments ranged from $31,400 to $77,850, and NUHW was assessed damages of $724,000 for aiding and abetting, participating in, or knowingly benefitting from a breach of duty under California law.

Although the jury instructions allowed the jury to impose either individual or joint-and-several liability, the special verdict form contained no place for the jury to indicate which they had chosen. The verdict form required the jury to list

damages under four different columns: "Salary and Benefits," "Diversion of Resources," "Increased Security," and "Lost Dues." On the form, the jury entered specific amounts for each defendant in each of the four categories. The final column of the form asked the jury to indicate the total liability of each defendant. The district court interpreted the form to impose several liability on each defendant for the amount in the final column.

The defendants moved: (1) for judgment as a matter of law; (2) for new trial; and (3) to alter the damages awards. The district court denied these respective motions, and the defendants timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II

We must first resolve what duty federal law imposes on local union officials who act to subvert the directives of a parent union in contravention of their own union's constitution.

Under § 501 of the Labor Management Reporting and Disclosure Act ("LMRDA"), officers of labor unions are held to the highest standards of responsibility and ethical conduct in administering the affairs of the union. 29 U.S.C. § 501. What makes this case unusual, and one of first impression for us, is that usually a union member, not a parent organization like SEIU, asserts a § 501 claim against union officers. *See, e.g.*, *Kerr v. Shanks*, 466 F.2d 1271, 1274 (9th Cir. 1972); *Stelling v. Int'l Bhd. of Elec. Workers, Local Union No. 1547*, 587 F.2d 1379, 1381 (9th Cir. 1978). In this case, however, the international union asserts that the defendants violated their duty to UHW, their own organization. The question

before us, one that underpins the majority of the defendants'
claims on appeal, is exactly to whom union officials owe that
fiduciary duty.

The UHW defendants posit that they owed this duty to
only the rank-and-file members of their local union. Because
they subjectively believed their actions assisted those
members by establishing a more democratic union with
localized control, they maintain they have done no wrong
under § 501. Their argument ignores the fact that they
diverted union resources to weaken their own union and form
a rival union merely because they did not agree with the
constitutionally permissible decision of the international
union. Because no construction of the LMRDA allows such
conduct based merely on the defendants' subjective motives,
we reject the defendants' argument.

The SEIU Executive Committee, under the authority
given to it by both its constitution and the UHW constitution,
carefully considered and adopted a measure it believed would
better serve its members. The UHW officers disagreed,
which they may do, and they voiced their opposition, which
they also may do. *See* 29 U.S.C. § 411 (protecting union
officials' speech). What they may not do under the law is use
their union's resources to actively obstruct implementation of
the final decision.

The international union has the authority, under its
constitution, to place a local union into trusteeship. The facts
adduced at trial show that SEIU did not take this decision
lightly; it appointed a respected former Department of Labor
Secretary to preside over a fact-finding hearing and
considered the issue for six months. Based on the
recommendation from this hearing and the defendants'

refusal to accept SEIU's decision to create a new consolidated local union under SEIU control, the international placed UHW into trusteeship.

Local unions are not completely at the mercy of their international unions. The trusteeship must be respected only if SEIU imposed it properly. If the international union takes action that violates its own fiduciary duties under federal law, or if the international union *improperly* impresses a trusteeship contrary to its constitution or federal laws regarding trusteeship, *see* 29 U.S.C. §§ 462–64, the local union can challenge the international union's decision. *See, e.g.*, *Navarro v. Gannon*, 385 F.2d 512, 519 (2d Cir. 1967) (allowing a local union to bring an action under § 501 against the international union when the international did not follow the LMRDA's trusteeship provisions or its own constitution). The defendants considered such a legal challenge, but they were told by their counsel that their chances of success were "nil." The international union had followed the law.

The defendants were left with no legal right to stand in the way of the implementation of SEIU's consolidation decision. Instead, they opted for an extensive, extra-legal challenge with one mission: to discard the charred remains of a weakened UHW while simultaneously starting a new competing local union of their own.

Now, after engaging in a pattern of conduct aimed at weakening *the very union they represented*, the defendants assert that, under the plain language of § 501, this extra-legal strategy nonetheless deserves the law's protection. They argue that Congress intended that the LMRDA ensure that unions are "internally democratic," and yet they also seek

judicial exoneration for their decidedly anarchistic methods of opposition.**²**

Their argument that the fiduciary duty of § 501 is owed only to the rank-and-file members of their local union fails. The plain language of the statute demonstrates that union officers owe this duty to the organization as a whole, not merely to the rank and file. Inherent in this duty is a requirement that officials spend union money "solely for the benefit of the organization and its members . . . in accordance with its constitution and bylaws." 29 U.S.C. §501(a). Using union resources to weaken the union itself constitutes a breach of this duty, even when the officers believe they are acting in the best interest of the rank-and-file members.

## A

To determine § 501's scope, we look first to the text. "[S]tatutory interpretation begins with the statutory text. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, judicial inquiry must cease." *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012) (citation and internal quotation marks omitted). The text of § 501 provides:

> The officers . . . of a labor organization occupy positions of trust in relation *to such organization* and its members as a group. It is,

---

² We note that Secretary Marshall, when recommending that SEIU impose a trusteeship on UHW, properly observed, "no *democratic* labor organization can permit local unions to nullify international decisions reached through the *democratic processes* specified in their Constitution and Bylaws." (emphasis added).

therefore, the duty of each such person . . . to hold its money and property solely for *the benefit of the organization* and its members and to manage, invest and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder.

29 U.S.C. § 501(a) (emphasis added). The statutory language explicitly highlights the duty of union officers to the organization itself, not merely the union's members.

Even if the defendants believed they were acting in the best interest of the union's members, they needed to consider their actions in relation to the interests of the union as an institution. The UHW constitution "shall at all times be subordinate to" the SEIU constitution, which prohibits local union officers from engaging in dual unionism or assisting in efforts to disaffiliate. The defendants' actions directly contravened the constitutional provisions of the union they represented. "Expenditures by union officers that violate the union's constitutions represent the classic case of breach of fiduciary duty under section 501." *Guzman v. Bevona*, 90 F.3d 641, 647 (2d Cir. 1996). We find no reason to change course merely because the union officers believed their actions indirectly benefitted rank-and-file members. The text of the LMRDA does not suggest a defense of "Trust us, we know what's best for our members."

Otherwise, the LMRDA would essentially provide an unmitigated avenue for rebellious local officers to circumvent the constitutional hierarchy of an organization like UHW. The UHW, at its founding, adopted the SEIU constitution and recognized its authority; that authority is meaningless if local

officers can attempt to scuttle the ship on the union's dime merely by invoking the putative interest of their members.

The defendants propose that despite this misconduct, SEIU may pursue only one remedy: injunctive relief under § 301 of the Labor Management Relations Act. *See* 29 U.S.C. § 185. But in a case such as this, where a malcontent officer has already resigned, the organization would have no remedy for those financial resources that the officer skimmed to assist the rebellion. We do not believe Congress intended to write such a blank check for internal insurrection.

We do not decide whether § 501 imposes a duty owed to the international union itself. *But see Operative Plasterers & Cement Masons v. Benjamin*, 843 F. Supp. 1267, 1274 (N.D. Ind. 1993) ("When the interests of a local and its International conflict, a local union officials' fiduciary duty under § 501 attaches primarily to the local union, not the International.").[3]

---

[3] The defendants have made *Operative Plasterers* the lynchpin of their case. It is not binding authority, and we find it unpersuasive for several reasons. Most significantly, the *Operative Plasterers* court did not interpret the statute according to its plain language when it held that the defendant only owed his § 501 duty to the *membership*, and not to the *organization*. *See Operative Plasterers*, 843 F. Supp. at 1274. Additionally, the court was all too willing to characterize its case as one between the local members and the international union, instead of between the defendant and the organization he was entrusted to represent. *See id.* ("[I]t would be contrary to the intent of the LMRDA to apply § 501(a) as a tool of insuring local officials' compliance with the wishes of the International leadership."). SEIU does not seek to use § 501(a) as a tool to ensure compliance with its directives; it seeks to use § 501(a) to regain the resources the defendants spent to undermine their own union. Finally, the *Operative Plasterers* court decided only that it could not grant summary judgment against the local official because "the record is silent

We decide only that § 501 imposes a duty to the local union as an organization. Under § 501, the defendants owed a duty to spend UHW resources in accordance with its constitution, which "shall at all times be subordinate to the International Constitution." Any expenditure that violates the SEIU constitution—including "[g]ross disloyalty," "[f]inancial malpractice," and "engaging in dual unionism"—would violate this duty. The mere subjective belief that any of these overarching violations would nonetheless be justified as benefitting the rank-and-file membership does not absolve the defendants of liability.

## B

We turn now to the district court's jury instruction defining this duty, which we review de novo for statements of law and under abuse of discretion for its formulation. *Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011). We repeatedly have held that "[j]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Id.* (quoting *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005)). A party is entitled to an instruction on its theory of the case only if it is supported by law and has foundation in the evidence. *Id.*

---

as to the effect of [the defendant's] action on Local 101 or its members' interest." *Id.* Our trial record is replete with evidence that the defendants used union resources to attempt to weaken UHW.

When instructing the jury on the defendants' duty to UHW under § 501, the district court repeated the entirety of § 501, except for the statute's inapplicable final sentence, verbatim.  The instruction did not tell the jury that the defendants owed any duty specifically to the international union.[4]  It instructed only that, as § 501 states, the defendants had a duty "to hold its money and property solely for the benefit of the organization and its members . . . in accordance with its constitution and bylaws." 29 U.S.C. § 501.  Because we hold that § 501, by its plain language, created a duty that the defendants owed to their own union, the instruction did not misstate the law.

---

[4] The instruction stated:

> The officers, agents, shop stewards and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group.  It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.

## C

The defendants propose that even if § 501 creates a fiduciary duty to the organization, another provision of the LMRDA shields them from any liability because their actions constituted protected free-speech activities. *See* 29 U.S.C. § 411.

Whether the LMRDA protects the defendants' conduct is reviewed de novo; whether the court properly formulated its instructions on this protection is reviewed for abuse of discretion. *Hunter*, 652 F.3d at 1232. Because our precedent demonstrates that the defendants engaged in conduct, not merely speech, we affirm the district court's application of law and its formulation of the instructions.

The free-speech provision of the LMRDA provides that "[e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions." 29 U.S.C. § 411(a)(2). This section, while broad, does not provide blanket protection for all union activities a member wishes to characterize as free speech. The statute preserves the union's right to "adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and . . . *conduct that would interfere with its performance of its legal or contractual obligations*." *Id.* (emphasis added).

Our case law distinguishes between speech critical of a union—which § 411 protects—and "conduct designed to impair the union's ability to function"—which § 411 does not protect. *Ferguson v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 854 F.2d 1169, 1174 (9th Cir.

1988).   In *Ferguson*, officers of a local union actively
opposed the imposition of a trusteeship by their parent union.
After the parent union imposed the trusteeship, the local
officers formed a rival union and urged members of the local
union to join.  *Id.* at 1171.  When the trustees filed internal
misconduct charges, the officers brought an action arguing
that § 411 protected their activities.  *Id.* at 1172.

We rejected their argument.  We explained that "a union
[that] has disciplined union members who established a rival
union, became its leaders and promoted it, and interfered
directly with the union's efforts to function as an institution"
has not punished the members for protected free speech.  *Id.*
at 1175.  The officers' conduct was not free speech; it was
"part of a pattern of conduct designed to destroy the union
and to interfere with the performance of its legal obligations."
*Id.* at 1174.  The conduct was not protected by the LMRDA.

We find no reason to distinguish *Ferguson* from the case
at hand.  The defendants, faced with trusteeship, wrongfully
engaged in a pattern of conduct designed to weaken the local
union while simultaneously setting up a rival union to
compete as the local union's collective bargaining agent.  The
defendants' portrayal of these obstructionist activities—
which included actively blocking the trustees' access to UHW
facilities and instructing employees to "[t]ake everything out
of the office"—as "symbolic slumber parties" goes beyond
the pale.  Under *Ferguson*, § 411 does not shield from
liability those who engage in subversive conduct.

The LMRDA does protect *some* of the defendants'
activities, such as simply speaking out in their individual
member capacities.  The district court carefully formulated its
instructions to ensure that "defendants were free to make their

case within the system" and were "free to express their opinions as union members on the jurisdiction and trusteeship decisions." But the district court also instructed the jury, consistent with *Ferguson*, that defendants "owed a duty to UHW and SEIU to refrain from obstructing or frustrating any formal decision made by SEIU or UHW." The instructions adequately explained that speech alone was not the type of conduct that could constitute "obstructing or frustrating," but the defendants did not have a right "while employed by UHW, to plan for the creation of a union or to undermine the ability of UHW to function after their departure."

The instructions adequately protected defendants from punishment for voicing their dissenting opinions while retaining a proper explanation of defendants' liability for their acts undermining UHW's ability to function and for establishing a new union. The district court did not abuse its discretion in formulating a correct statement of the law to be applied once the jury had decided on the relevant facts.

**D**

Before we can declare that ample evidence at trial supported the jury's verdict, we must finally consider the defendants' proposed authorization defense. Because no union can authorize expenditures in violation of its constitution, the district court did not err in excluding this defense in its final charge to the jury. We review the district court's decision de novo. *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005).

**1**

The defense of authorization derives from a general rule that "[c]ourts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's" governing documents. *Stelling*, 587 F.2d at 1388 (quoting *Vestal v. Hoffa*, 451 F.2d 706, 709 (9th Cir. 1971)) (internal quotation marks omitted). Often, if a union official's act has been authorized by constitution, bylaw, resolution, or by a vote of the membership, liability under § 501 attaches only if: (1) the officer benefitted personally from the act; or (2) the act is patently unreasonable or taken in bad faith. *See Guzman*, 90 F.3d at 647; *Local No. 48, United Bhd. of Carpenters & Joiners v. United Bhd. of Carpenters & Joiners*, 920 F.2d 1047, 1052 (1st Cir. 1990).

Against this backdrop of judicial reluctance to intervene in union affairs, however, stands § 501 of the LMRDA and a union's constitution. Section 501 requires that union funds be spent only for the benefit of the organization and its members in accordance with the union constitution. *See* 29 U.S.C. § 501. The resolution of this conflict requires that the authorization defense apply only when the authorizing document, as then-Senator John F. Kennedy explained before § 501's passage, is "not in conflict with the [union's] constitution and by-laws." *Local No. 92, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers v. Norris*, 383 F.2d 735, 739 n.13 (5th Cir. 1967) (quoting 105 Daily Cong. Rec. 16415 (Sept. 3, 1959) (remarks of Senator John F. Kennedy)). Local union officials cannot assert the authorization defense when they take actions "in direct conflict with, and contravention of, provisions of the constitution of the International Union which remained applicable to the Local." *Id.* at 739.

The defendants used union resources to undermine and weaken their own union and promote a rival union. These actions contravene the SEIU constitution, and, therefore, also the UHW constitution. Thus, as a matter of law, no bylaw or board resolution could authorize their actions.

**2**

Even assuming the defendants had a legal claim to such an instruction, the UHW Executive Board resolutions could not, as a matter of fact, authorize the officers' acts. The resolutions authorized the officers "to take any and all *appropriate measures* to protect our members' right to vote, to remain in UHW, by giving nursing home-care workers the means and time to be able to freely cast their secret ballot to vote to stay in UHW." (emphasis added). The resolution authorizes only "appropriate measures." The defendants executed a strategy to weaken UHW, leaving it ungovernable, while simultaneously planning the creation of a new union to compete with UHW. These actions expressly violated the UHW and SEIU constitutions. They cannot be read as "appropriate measures" that the UHW Executive Board could authorize.

**E**

Once we conclude that § 501 creates a duty that the defendants owed to UHW and that they could not claim a defense based on free speech or authorization, the defendants' appeal of the jury verdict amounts only to a challenge to the sufficiency of the evidence.

Jury verdicts are reviewed for substantial evidence, which "is evidence adequate to support the jury's conclusion, even

if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) (citation and internal quotation marks omitted).

From our review of the trial record, we are satisfied that the plaintiffs provided ample evidence that the defendants diverted union resources to weaken UHW and form a rival union. We will not rehash the facts here. Because the defendants were not entitled to an authorization defense, the record was sufficient in our judgment to support the jury's finding that defendants violated their fiduciary duty to UHW under § 501.

## III

The defendants claim that the district court committed prejudicial error when it excluded evidence that would question the ethics, motives, and leadership of SEIU. We review a district court's exclusion of evidence for abuse of discretion and will reverse only when an error is prejudicial. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008).

The evidence excluded was irrelevant. The defendants' fiduciary duty under LMRDA §501 to hold and spend union funds for the benefit of the organization itself remains regardless of whether SEIU is a model international union. Any evidence showing SEIU had questionable leadership and ethics would not lessen the defendants' obligation to refrain from using union resources to weaken their own union and engage in dual unionism. This evidence could only prove facts that were not "of consequence in determining the

action." Fed. R. Evid. 401(b). The district court did not abuse its discretion by excluding irrelevant evidence.

## IV

The defendants deserve some recognition for their gall. Having once told the district court that they possessed no UHW property before later returning substantial amounts of that property (but not all that remains missing), they now invite us to trust that they do not possess any property still at large. We decline the invitation.

The district court issued a permanent injunction that required the return of all UHW property possessed by the defendants. The defendants argue "there is no evidence in the record that they continue to possess any UHW property." We review the factual findings underlying a district court's decision to issue an injunction for clear error. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653 (9th. Cir. 2002).

The first skirmish in this case centered on the issuance of a temporary restraining order requiring the defendants to return any and all UHW property to UHW. The defendants opposed the order, insisting to the district court that they did not possess any UHW property. After the district court issued the order and we upheld it, *Serv. Emps. Int'l Union*, 598 F.3d at 1072, the defendants returned more than sixty boxes of material to UHW. Then, shortly before trial, the defendants deposited seventeen more boxes with their counsel, who turned the property over to UHW.

The district court found, and the trial record shows, that some equipment remains missing. The court justly

considered the defendants' obvious lack of credibility and wisely concluded that "there is reason to expect yet more missing files will turn up. There is still a need for an injunction."

Having previously cried wolf in the federal courts before, only to have their cry exposed, the defendants merit no trust when they cry again. The district court properly issued the permanent injunction.

## V

Finally, we turn to the defendants' challenge to the district court's interpretation of the verdict form. They contend that the district court erred when it read the verdict to impose several liability, and not joint-and-several liability, on the twenty-four individual defendants and defendant NUHW. This argument, though, carries a significant burden, one the defendants have not overcome.

"[W]hen confronted by seemingly inconsistent answers to the interrogatories of a special verdict, a court has a duty under the seventh amendment to harmonize those answers, if such be possible under a fair reading of them." *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th Cir. 1991).[5] We review a trial court's interpretation of a verdict and its decision to alter or amend a judgment for abuse of discretion. *Id.* at 1397–98. With respect to whether the jury intended joint-and-several liability or several liability, we must determine whether the district court's interpretation was "(1) illogical, (2) implausible, or (3) without support in inferences that may be

---

[5] "[O]nly if all attempts at reconciliation fail" can the court order a new trial or resubmit the special verdict to the jury. *Id.*

drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (2009) (en banc) (internal quotation marks and citation omitted).

The verdict form in this case left much to be desired. Although the district court instructed the jury to "enter all amounts for which you find that defendant liable, including any amounts for which others may also be jointly liable," nothing in the instructions nor the verdict form explained exactly how the jury should demarcate between several and joint-and-several liability. It comes as little surprise that the jury returned a verdict open to debate.

The defendants raise several coincidences in the verdict that joint-and-several liability could possibly explain. Most glaringly, the amount entered for defendant NUHW under "Diversion of Resources," $720,000, totals the exact combined amount of the remaining defendants, indicating the possibility that each individual defendant's liability would be joint and several to NUHW's liability. The defendants argue that the jury also entered identical amounts for some of the defendants in each category of conduct, which would be a reasonable way for a jury to express its desire for joint-and-several liability.

The concern that the amounts entered could *possibly* indicate joint-and-several liability, however, leads us astray from the proper focus of our inquiry. Rather, we must answer only one question: whether the district court's interpretation of the verdict and the jury's intent was illogical, implausible, or without support in inferences that may be drawn from facts in the record. *Id.* We cannot fairly quarrel with the district court's reading in this manner.

The district court's reading is both logical and plausible. On the verdict form, the jury awarded different amounts against different defendants, granting specific amounts for each defendant in each of the four categories of possible damages. This result is consistent with the jury imposing liability against each defendant in the amount of harm caused by that particular defendant's actions. Also, although the amount assessed against NUHW under "Diversion of Resources" equaled the exact combined amount of the other defendants, the jury did not follow the same pattern when awarding damages under "Lost Dues." There, the combined amount of the individual defendants equaled $12,000; yet the jury only assessed $4,000 against NUHW. These facts plausibly support the district court's inference from the special verdict that the jury intended to reject joint-and-several liability and instead embraced several liability.

The defendants also gloss over the most significant column on the verdict form: the final one, in which the jury entered discrete amounts for each defendant. Ultimately, the district court did no more than impose the exact liability for each defendant that the jury had entered on the special verdict form.

The defendants contend that SEIU has failed to reconcile the mathematical coincidences they have raised, but that burden does not fall on SEIU. The defendants cannot meet their burden by merely proving there may be other plausible interpretations of the verdict form. They must show that the district court's interpretation was implausible. Because we believe the defendants have not met that burden, we uphold the district court's interpretation of the verdict form and its denial of the defendants' motion to alter or amend the judgment.

# VI

The judgment of liability was properly entered when a correctly instructed jury, on a sufficient factual record, found the defendants in breach of their fiduciary duties under § 501 of the LMRDA and California state law. There was no abuse of discretion in the district court's ruling on the challenge to the special verdict the jury returned.

**AFFIRMED.**